## INDUCEMENT TO PEDESTRIANS TO WALK THROUGH A SWITCH YARD.

[Circuit Court of Cuyahoga County.]

BALTIMORE & OHIO RAILROAD COMPANY v. JOHN ·CAMPBELL.

Decided, October 29, 1906.

*Negligence—Habitual Use of Tracks by Pedestrians—Liability of Company to One Struck by Locomotive—Running without Light or .Warning on a Dark Night.*

Where a railroad company maintains yards and switch-tracks along docks and near to a much traveled thoroughfare of a city, and persons have been in the habit for a long time of walking along these tracks and up ' to this thoroughfare to the 'knowledge and with the acquiescence of the company and without notice or warning to the contrary, a person who, while walking carefully along these tracks at a point near the thoroughfare on a dark night, is struck by a locomotive backing down upon him without warning, may recover from the company for his injuries thus sustained. *Harriman* v. *Railway,* 45 O. S., 11, followed.

WINCH, J.; MARVIN, J., and HENRY, J., concur.

This was a personal injury damage case, with verdict and judgment for the plaintiff below. The petition alleges that:

"On the 24th day of November, 1903, the defendant was the owner of, and engaged in operating, a line of railway, extending to the village of Fairport, in the state of Ohio; that said line of railway, together with two or three side-tracks, extended along the easterly side of Grand river, and the space between Grand river and said tracks was taken up and occupied by docks, used chiefly for unloading ore from vessels and loading the same into cars on defendant's tracks; that at the point about opposite the center of said village of Fairport, a street called Third street, extending in a westerly direction, intersects said tracks at about right angles, and leading directly to the business portion   of said ore docks; that there are no other streets nearby, leading to or from that portion of said ore docks, by reason of which said Third street was, and for many years had been, a very busy thoroughfare, used at all hours of the day and until late at night, by large numbers of men employed at said docks, and by the employes and officers of boats lying in said river; that a large part

of the men so employed on boats and on said docks, and many other persons having business in the neighborhood of said docks, were obliged to, and did for many years past, use and walk upon the tracks of the defendant from both directions to the point intersected by said Third street, which was the chief and principal outlet from said docks, leading to the center of said village.

"Plaintiff alleges that the tracks of the defendant had been used in the manner aforesaid, by persons going to and from their work at said docks, for more than ten years preceding said 24th day of November, 1903, and that the defendant acquiesced in and consented to the use of its tracks in the manner aforesaid and made no objections thereto.

"On said 24th day of November, 1903, plaintiff was an employe of the 'Hartnell' a vessel plying the waters of the Great Lakes, and then lying at said docks; that at about six o'clock in the evening of said day, he left his boat to go to the post-office, and entering upon the tracks of the defendant, walked in a northerly direction, toward the point of intersection of said Third street; that while thus walking, in a careful, safe and proper manner, between two of said tracks, along and upon a well-beaten path, suddenly and instantly, without any notice or warning to him whatsoever, and when he was at a point within one hundred and fifty feet from said Third street, a switching engine of the defendant, under the charge and control of its employes, silently backed down upon him from behind, and struck him upon the back, below the left shoulder, suddenly throwing him forward in such a manner that he fell with his left arm across the rail, so that the same was then and there run over by said locomotive, and so badly crushed and mangled that the same had to be immediately thereafter amputated near the shoulder.

"Plaintiff further says that said locomotive was without a headlight and that no signal of its approach was given by the ringing of its bell or otherwise; that had there been a headlight on the rear of said engine, its reflection would have given him notice and warning; and no headlight being thereon, he was deceived and misled and induced to believe that he was in safety, and that no train or locomotive was approaching.

"That said injuries were received in the manner aforesaid, without any fault on his part, but solely by and on account of the gross negligence of the defendant through its servants and agents in charge of said locomotive; that said negligence consisted chiefly in the failure of the servants of defendant in charge of said locomotive to carry a headlight, and in failing to give any signal or warning of the approach of said locomo-

tive; said servants and agents of defendant were also negligent in failing to see plaintiff before striking him, and in failing to stop said locomotive or slacking speed so as to avoid the injuries plaintiff complains of."

The bill of exceptions shows that such evidence was introduced to establish the allegations of the petition that the jury might well have found that the accident occurred in the manner and under the circumstances claimed in the petition. The night was dark; the plaintiff testified that as he proceeded along the beaten path between the tracks, he looked back frequently and listened, but saw and heard nothing until he was struck. Nobody saw him struck and the train crew did not know they had injured anybody until some time after the accident.

No prejudicial errors appear to have occurred on the trial. The sole question which has given us concern is whether, under the law, the plaintiff was entitled to recover at all.

His counsel rely upon two cases in this state, *Railroad Company v. Snyder*, 18 O. S., 399, and *Harriman v. Railway Company*, 45 O. S., 11.

Part of the syllabus of the Snyder case reads as follows:

"It is the duty of persons in charge of cars passing along streets or other frequented places to exercise great caution; and if, by failure to do so, a child of tender years is injured, the company represented is liable in an action by the child."

The first paragraph of the syllabus in the Harriman case reads:

"Where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road at a given point, without objection or hindrance, it should, in the operation of its trains and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof, and is bound to exercise care, having due regard to such probable use, and proportioned to the probable danger to persons so using its road."

Counsel for railroad company insists that the liability of the railroad company in the Snyder case grew out of its negligently running down a child on its tracks, after it saw the

child in a place of danger and could have stopped or warned the child off the track.

The true test in the Harriman case is claimed to be the negligent keeping on its premises, at a place where it knew the public was accustomed to go, of a thing dangerous in itself, to-wit, a torpedo, attractive to children, and which the plaintiff, by childish instincts, was led to explode.

It is said that the Baltimore & Ohio Railroad Company was operating its switch engine in its own yards, and in its usual and customary manner, on the night that Campbell was injured, and that, at best, Campbell was a mere licensee, without invitation or inducement, and that his permitted use of the track was subject to all risks incident to the ordinary use of the track by the company.

Our attention has been called to four cases later than the Harriman case in which it is claimed that the doctrine of that case is modified, but our examination of said cases leads us to believe that the Supreme Court has not departed from the rule stated by it in the Harriman case, so far as the same applies to duties of the company to the public upon its tracks at places known by it to be frequented by the public without objection by it.

The case of *Railroad Company* v. *Marsh*, 63 O. S., 236, was also a torpedo case, but the boy, Marsh, had been employed by the station agent without authority and without the knowledge of the company, to attend to switch lamps, and was on his way about that business when injured. The fourth paragraph of the syllabus reads:

"While a railroad company owes a duty to the public to keep its tracks free from unnecessary danger along where the public are allowed to use such tracks as a way for travel, one who is not using such tracks as such way can not be heard to complain of the breach of such duty, and in case of injury to him can not bring the breach of such duty to his aid in attempting to recover for an injury caused by reason of some other alleged negligence of the company."

In the case of *Railroad Company* v. *Aller*, 64 O. S., 183, it appears that Aller departed from the path used by the public

and was so injured.  Judge Shauck, in delivering the opinion
(page 193), says of the Harriman case:

"The doctrine of the case is that when the company became
aware that persons were using the road for purposes of their
own, it became its duty, not to alter the construction of its
road, but to operate it consistently with the facts thus known
to it."

The case of *Railway Company* v. *Workman,* 66 O. S., 509,
involved the duties of the company toward one of its own
employes, using a "speeder" upon the main track, "without
any invitation or inducement therefor by the company, but
with no objection on the part of the company."  Judge Davis,
on page 541 of the opinion, says:

"The doctrine of *Harriman* v. *Railway Company,* 45 Ohio
St., 11, does not apply here, because there is in this case no
pretense of acquiesence in the *public* use of the railway track
in the way in which it was used by the deceased, nor was there
any invitation or inducement held out to the deceased to so
use it."

The case of *Railroad Company* v. *Kinz,* 68 O. S., 210, cites
the Harriman case, and suggests that that decision was bottomed
upon the sound principle that the railroad company maintained
an attractive and dangerous thing upon its premises.  It does
not suggest that the first paragraph of the syllabus of the Har-
riman case, which has been heretofore quoted, is not good law,
but shows that the law as so stated is not applicable to the facts
in the Kinz case.

Finally, no Ohio case has been cited to us which holds a doc-
trine contrary to that quoted from the Harriman case.  The
only suggestion of counsel has been that the ruling was not
necessary to a decision of said case and that the Supreme Court
has found it inapplicable to the facts of the other cases cited.

Nor do we believe that the facts of this case show that Camp-
bell was upon the path between the tracks as a mere licensee,
without invitation or inducement.  To use the language on page
243 of the Marsh case, his being upon the path between the
tracks at the time was induced by the fact that said path had
been used for years as a line of travel by the public.

The company must be held to care commensurate with this inducement, so long as it permits the same to continue, without signs or other warning to keep the public off. To back down upon said path and upon a person walking carefully thereon, in the night season, without warning, as the jury found in this case, is actionable negligence.

Judgment affirmed.

*Kline, Tolles & Goff,* for plaintiff in error.

*W. H. Boyd* and *McGrath & Stern,* for defendant in error.

---

### REVIEW OF PROCEEDINGS UNDER THE JONES LAW.

[Circuit Court of Franklin County.]

IN THE REHEARING OF A PETITION ON FILE UNDER WHAT IS KNOWN AS THE JONES LOCAL OPTION LAW.

Decided, October, 1906.

*Liquor Laws—Proceedings in Error—Proper Title—For Review in Circuit Court—Under the Jones Local Option Law—Granting Leave to File Petition in Error in Chambers—Uncertain Features of the Law.*

1. Where a review is desired of proceedings under the Jones local option law (98 O. L., 68), the qualified elector who feels aggrieved should appear as plaintiff and the mayor of the municipality in question as the defendant in error.

2. Inasmuch as no express authority is given the judges of the circuit court in this statute or in any statute to grant leave to file a petition in error in vacation at chambers, a petition filed at such a time and by such leave must be stricken from the files.

3. Whether the provisions for review under this statute are defective and void for uncertainty, and what effect that would have upon the law itself—*Quaere?*

WILSON, J.; SULLIVAN, J., and DUSTIN, J., concur.

In these cases it is sought to obtain a review in this court of the proceedings before the officers with whom the petitions were filed, and by whom the order was made in pursuance to the provisions of the act popularly known as the Jones Local Option