J. W. ELLIS, ADMINISTRATOR OF BENNIE HIGHTOWER ELLIS, v. THE CAROLINA POWER AND LIGHT COMPANY.

(Filed 16 March, 1927.)

**1. Evidence—Nonsuit.**

Upon a motion as of nonsuit under our statute the evidence is to be taken in the light most favorable to the plaintiff, with every reasonable intendment, and every reasonable inference to be drawn therefrom.

**2. Negligence—Electricity—Dangerous Instrumentalities.**

Those who furnish electric light and power are held to a high degree of care, commensurate with the dangerous character of the instrumentality in the erection and inspection of the poles and wires carrying a deadly current of electricity, which they transmit and furnish to the public for compensation.

**3. Evidence — Negligence — Nonsuit—Instructions—Electricity—Dangerous Instrumentalities.**

Evidence that the 9-year-old intestate of plaintiff was found dead with the uninsulated end of the defendant electric company's live wire in his hands; that this was on an abandoned side line connected with the main line carrying a deadly voltage, and ran some fifteen feet from a frequented pathway used by the family of the intestate, which the intestate had used on this occasion in going home from Sunday school; that on prior occasions these wires had shocked others, and the defendant should have known thereof by reasonable inspection, and that close to the place where the intestate's hands had clasped the deadly uninsulated wire there was a glass insulator around which the wire had been wrapped, and which was on a rotten cross-arm that had been supported by the pole, is *held* sufficient to take the case to the jury upon the defendant's motion as of nonsuit, and to deny its request for a peremptory instruction in its favor upon the issue of actionable negligence.

APPEAL by defendant from *Cranmer, J.*, and a jury, at September Term, 1926, of JOHNSTON. No error.

Necessary facts stated in the opinion.

*Wellons & Wellons for plaintiff.*

*W. L. Currie, Pou & Pou and Abell & Shepard for defendant.*

CLARKSON, J. This is an action for actionable negligence brought by plaintiff, administrator of his son, Bennie, against defendant for causing his son's death, he being electrocuted by coming in contact with a live wire belonging to defendant company.

The issues were the usual ones in a case of this kind. All were answered in plaintiff's favor and damages awarded.

The sole question presented by the defendant's assignments of error in this appeal is: Whether or not his Honor erred in refusing to grant defendant's motion to nonsuit at the close of plaintiff's evidence, and again at the close of all the evidence, and in refusing to grant defendant's prayer for peremptory instruction that the jury should answer the issue as to defendant's negligence "No."

On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

The material facts are: The State had moved its State School for the Blind from inside to the outskirts of Raleigh, near Pullen Park. The grounds, although somewhat rough and rocky, all the underbrush had been cut out. Into these grounds and grove defendant power company ran a switch line from its main line to furnish electricity to the persons and companies that had contracted to construct the buildings. The side line was put into the school grounds about 1917, when a contract was made to build three buildings, then the World War came on. In May, 1923, a gymnasium and swimming pool was being built on the school grounds, but the power line was not being used at the time and had not been used for six or eight months. The power was transmitted in the open school grounds on three poles, in the usual way. J. W. Ellis, the father of Bennie, had been living in a house on the grounds about a month and a half before the killing and was working on the farm. The switch line ran near the house plaintiff was living in and went up in the school grounds in the grove. The boy was killed near the pole between the pole the transformer was on and the main line. W. R. Hart, who was excavating for the swimming pool, caused a stump to be blown up and a part of it came down between the two poles and cut the wires in two and they fell on the ground. This was Thursday,

3 May. After this, Mr. Hart, with some gloves on his hands, and on a horse, tied the wires back 12 or 15 feet above the ground, in order to get around that pole with his teams. The wires were 30 or 40 yards from the gymnasium where the swimming pool was located. Workmen noticed the wire being down on the side of the pole in passing. On Saturday, about 10 o'clock a.m., a negro man working with other hands, passing in some way got knocked down and shocked by the wire, "the negro 'staggered' around there."

The pole where the plaintiff's son was electrocuted was about 100 feet from the transformer pole. There were no weeds or undergrowth around the pole where he was killed. On Sunday, 6 May, about 9 o'clock in the morning, plaintiff's son, Bennie, about 9 years of age, went to Sunday school. On his way he had to pass the death place, which was about 60 to 75 yards from his home. On his way he went along a *pathway,* 12 or 15 feet from the live wires hanging down on the ground and the ends 6 or 7 inches uninsulated. After Sunday school he started back to his home. About 11 o'clock he was found lying three feet from the pole dead, with the end of the wire uninsulated in his right hand. There were two wires down, one small one and one large one, he had the larger one in his hand. The wires were hanging down from the top of the cross-arm position of the power line pole, and both of the wires were on the ground. The end of the wire, for 6 or 7 inches, was not insulated; this end the boy had in his hand. The other wire that was on the ground was attached to the end, a pin with glass on it, and the wire was fastened around the glass; 6 or 7 inches of the wire was beyond the insulation. The cross-arm that had been on the transformer pole was lying on the ground at the foot of the pole. "It was rotten and the pins had fallen out. There was one pin on one of the wires, and the rest of the pins had fallen out of the arm on the ground, and was lying around the arm." Something like half an hour after the boy was found electrocuted the power was cut off. A witness testified that he "could hear the meat frying in his hand," as he lay on the ground dead with the wire in his hand. The negative evidence was that no one was ever seen to repair or inspect the line.

Was there sufficient evidence—more than a scintilla—to go to the jury? In our opinion there was.

From the evidence, the place where the death occurred was on the new grounds of the State School for the Blind. These grounds had been cleared up and three buildings erected on it. Plaintiff and his family, including the boy that was killed, was living in a house on the grounds, and laborers with their teams were working on the grounds. The defendant company had not used this side-line for 6 or 8 months, yet this dead end was heavily charged with electricity, by inference some

2300 voltage—sufficient to kill. The wires so charged were lying on the ground for several days within 12 or 15 feet from the path leading to and from plaintiff's home. A negro was knocked down by the live wire on Saturday before the young boy was electrocuted on Sunday, in the presence and well known to the workmen. Lying on the ground was the glass on which was the wire heavily charged, near the pathway; this, as a matter of common knowledge would attract a child and the natural consequence to pick it up.

Under the facts and circumstances of this case, we think there was sufficient evidence of negligence, more than a scintilla, to be submitted to the jury, and no evidence of contributory negligence.

In *Graham v. Power Co.,* 189 N. C., at p. 381, we gave a synopsis of the decision in *Haynes v. Gas Co.,* 114 N. C., 203, as follows: "In *Haynes v. Gas Co.,* 114 N. C., 203, *Burwell, J.,* it was held that John W. Haynes, about 10 years of age, who was 'a very healthy, intelligent, moral and industrious boy, well educated for his age,' who was killed by taking hold of a 'live wire,' on or near the sidewalk over which he was passing in the city of Raleigh—the principle of *res ipsa loquitur* applied. 'A complete prima facie case of negligence was made out,' . . . and 'we are clearly of the opinion that there was no evidence of contributory negligence.'"

In the *Haynes case,* the live wire was on or near the sidewalk; here it was in open grounds near a pathway accustomed and necessary to be traveled for ingress and egress.

"The owner or operator of an electric plant is bound to exercise a reasonable degree of care in erecting pole lines, selecting appliances, *insulating the wire wherever people have a right to go and are liable to come in contact with them, and in maintaining a system of inspection* by which any change which has occurred in the physical conditions surrounding the plant, poles, or lines of wire, *which would tend to create or increase the danger to persons lawfully in pursuit of their business or pleasure, may be reasonably discovered.* It would hardly do to say that the defendant can only be required to exercise due diligence after it received notice of any defect in its appliances or of any change in the physical conditions surrounding them, for this would be placing a premium upon negligent ignorance." (Italics ours.) *Bourke v. Butte Elec. & Power Co.,* 33 Mont., 267, 83 Pac., 473. See *Tackett v. Henderson,* 12 Cal. App., at p. 663.

In *Love v. Power Co.,* 86 W. Va., at p. 397, citing numerous authorities, it is held: "A company maintaining electric lines over which a current of high voltage is carried is bound to exercise the necessary care and prudence to prevent injury at places where others have the right to go either for *work, business or pleasure.*"

In *Benton v. Public-Service Corp.*, 165 N. C., at p. 356, *Brown, J.*, said: "It is well settled by the decisions of this and other courts that those who deal in electricity, and furnish it for use, are held to the highest degree of care in the maintenance and inspection of their wires through which the electric current passes."

It is said in *Alabama City G. & A. Ry. Co. v. Appleton*, 54 Sou. Rep. (Ala.), p. 640: "It is also the duty of such company to make reasonable and proper inspection of its appliances. This duty does not contemplate such inspection as would absolutely forestall injuries. Whether in a given case the duty to inspect, as reasonable care, prudence and foresight would suggest, has been performed is a question for the jury to determine under all the facts and circumstances of the event. 1 Joyce, sec. 438B, and notes thereto."

"The danger is great and care and watchfulness must be commensurate to it." *Haynes v. Gas Co., supra.*

"In *Ins. Co. v. Boone*, 95 U. S., 117, it is said: 'The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss. . . . The inquiry must always be whether there was an intermediate cause disconnected from the primary fault and self-operating, which produced the injury.' *Inge v. R. R.*, 192 N. C., at p. 530. 'A cause that produced the result in continuous sequence and without which it could not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under the facts as they existed. *Ramsbottom v. R. R.*, 138 N. C., 38.' *Lea v. Utilities Co.*, 175 N. C., at p. 463. In *Hudson v. R. R.*, 176 N. C., p. 492, *Allen, J.*, confirming the above rule, says: 'To which we adhere, with the modification contained in *Drum v. Miller*, 135 N. C., 204, and many other cases, that it is not required that the particular injury should be foreseen, and is sufficient if it could be reasonably anticipated that injury or harm might follow the wrongful act.' *DeLaney v. Henderson-Gilmer Co.*, 192 N. C., 647." *Clinard v. Electric Co.*, 192 N. C., at p. 740.

It may not be amiss to note that the *Haynes case*, so ably written by *Justice Burwell*; one of the greatest of this Bench, is quoted over the nation as a leading case in regard to the duty and measure of care resting on and required of electric companies. Those who are engaged in the electrical business are held by the courts to the highest degree of care in the manufacture, distribution, maintenance and inspection.

Lying on the ground, almost in the frequented path that the young lad, 9 years old, had to travel to and from his home, was this invisible, deadly live current in the wire, within 6 or 7 inches from its end unin-

sulated. This deadly wire was taken hold of by the young lad and produced instant death—2300 voltage. It lay there, perhaps several days, like a serpent. The rattle-snake warns its victim, but not so with this subtle, invisible and death-producing power. It is a matter of common knowledge that this wonderful force is of untold benefit to our industrial life. Electric power is an industry-producing agency, and the hydro-electric development has been one of the greatest factors in the State's progress, and especially its industrial expansion. Every legitimate encouragement should be given to its manufacture and distribution for use by public utility corporations, manufacturing plants, homes and elsewhere. On the other hand, the highest degree of care should be required in the manufacture and distribution of this deadly energy and in the maintenance and inspection of the instrumentalities and appliances used in transmitting this invisible and subtle power.

The charge of the court below is not in the record. The presumption is that the court below charged fully the law applicable to the facts.

The matter has been discussed recently by this Court and numerous cases are cited in *Graham v. Power Co., supra.* An interesting case has been recently written by *Whitfield, J., Starke v. Holtzclaw*, 105 Sou. Rep. (Fla.) (25 July, 1925), p. 330, citing authorities applicable.

For the reasons given, there is

No error.