W. M. RAMSEY, ADMINISTRATOR OF EZRA HUGHES, DECEASED, v. CAROLINA-TENNESSEE POWER COMPANY AND LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

(Filed 23 June, 1928.)

**1. Electricity — Duty to Inspect, Repair, etc. — Negligence — Res Ipsa Loquitur.**

Companies manufacturing and transmitting deadly currents of electricity are charged with the duty not only to construct, but to maintain its wires in a condition commensurate with the danger to the public, and

having control or management of the plant, the doctrine of *res ipsa loquitur* applies when it is shown that an injury or death has been occasioned that would not have occurred under -ordinary conditions, leaving the question of negligence an issue for the jury.

**2. Same.**

Where a railroad company has permitted an electric transmission power company to maintain one of its. transmission poles on the railroad right of way, and has negligently shunted one of its cars so as to cause it to strike the pole and cause the deadly current of electricity from high voltage wires to become short circuited, causing visible signs of danger both at the pole and other places to which the current was thus transmitted, causing the death to an employee of a user of the otherwise harmless current: *Held,* the question of reasonable repair by the power company is one for the jury in the action against both defendants for the wrongful death.

**3. Negligence—Proximate Cause—There May Be More Than One Proximate Cause of an Injury.**

Where two or more defendants are sued for damages, upon evidence tending to show the concurring negligence of each as the cause of the injury in suit, there may be more than one efficient proximate cause of the injury.

**4. Negligence—Actions—Evidence—Damages.**

The measure of damages to be awarded in a negligent personal injury case is exclusively for the jury, and evidence of the amount of an attempted compromise is properly excluded.

**5. Jury—Challenges—Number and Parties Entitled.**

When two defendants are sued for damages in negligently causing a death, the decision of the trial judge is final as to the interest of each defendant and the number of challenges to the jury allowable to each. C. S., 2331, 2332.

APPEAL by defendants from *Deal, J.,* at January Term, 1928, of CHEROKEE.

Action for personal injury resulting in death. As to the Murphy Steam Laundry the action was dismissed as in case of nonsuit. On behalf of the plaintiff there was allegation with proof that the Carolina-Tennessee Power Company was and now is a corporation engaged in the business of producing and transmitting by means of wires, transformers, etc., and selling to its customers, one of whom was the Murphy Steam Laundry, electric currents and electric energy for domestic, industrial, and other uses; that the L. & N. Railroad Company was and now is a corporation operating a railroad as a common carrier of passengers and freight between Murphy, North Carolina, and Blue Ridge, Georgia; that prior to 19 April, 1927, the Power Company, with the knowledge and consent of the Railroad Company, had erected and was

then maintaining one of its poles (to which were affixed transformers and wires of high voltage) within a few feet of the end of a spur track over which the Railroad Company switched and moved its cars; that there was no bumper, embankment, or other device to prevent cars from running off the track; that the pole was on the right of way of the Railroad Company, as was also the anchor to which the guy or cable was fastened; that the guy extended from the anchor to the pole and was directly over the right of way; that both defendants were negligent in that one erected the post and put up the guy on the right of way and the other permitted its right of way to be used for this purpose; that on 18 April, 1927, the Railroad Company negligently shunted cars on the spur track so as to cause one of them to run off the rails at the end of the track and to strike the guy with great force, thereby injuring the transformers on the pole, and other electrical appliances, and causing the electric current transmitted on the high voltage wires to flow along the wire leading to the plant of the steam laundry; that among other machines the laundry company used washers which were operated by electricity and which were connected with and disconnected from the power line by the insertion or removal of a plug; that on 19 April, 1927, the plaintiff's intestate in doing the work assigned him as an employee of the laundry company suffered an electric shock of such intensity as to cause his instant death, and that the negligence of both defendants was the proximate cause thereof.

Separate answers were filed and each defendant denied the material allegations of the complaint and pleaded contributory negligence on the part of the intestate. All the issues were answered in favor of the plaintiff and damages were assessed. From the judgment rendered the defendants appealed, assigning error, which is set out in the opinion.

*Bryson & Bryson and J. D. Mallonee for plaintiff.*
*R. L. Phillips for Carolina-Tennessee Power Company.*
*M. W. Bell for Louisville and Nashville Railroad Company.*

ADAMS, J. Since both the Power Company and the Railroad Company moved in compliance with the statute for judgment of nonsuit, it becomes necessary to examine the evidence in its relation to the alleged negligence of each defendant. One of the contentions of the plaintiff is this: that the Power Company was negligent in putting up its post and its guy on or near the roadbed of the Railroad Company, and that the latter company was negligent in permitting them to be put there. While there is some evidence in support of this contention there are other circumstances which in our opinion justify a denial of the motion. There was evidence that the intestate's death occurred in this way: Two washers were outside the laundry; one was connected by means of a

cord or cable to a three-way socket midway between the washer and the laundry building where there was a switch or little button; connected with this was a cord or "green twisted wire" which extended through the window of the laundry and "was pushed into a plug." The deceased was in charge of the washing machine; he had gone into the house and had returned when a colored woman told him the motor was smoking. He took hold of the switch with his right hand, said "Lord, have mercy," quivered, shook, caught the wire with his left hand, "crumpled up against the washing machine," and instantly died. These circumstances, if accepted by the jury, were sufficient to make a case of prima facie negligence against the Power Company, subject of course to any explanation it should make, or in the absence of explanation to the hazard of an adverse verdict. *Houston v. Traction Co.*, 155 N. C., 4; *Shaw v. Public-Service Corporation*, 168 N. C., 611; *Cochran v. Mills Co.*, 169 N. C., 57. It has often been said that when a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have control of it use the proper care, it furnishes evidence that the accident arose from want of such care; but the application of the maxim extends no further than to require the case to be submitted to the jury. *Shaw v. Public-Service Corporation*, supra; *Ridge v. R. R.*, 167 N. C., 510.

The Power Company says that the maxim, *res ipsa loquitur*, never applies where the cause of the accident is known, and that the verdict establishes the negligence of the Railroad Company as the proximate cause of the injury and death. An answer is given in *Electric Co. v. Letson*, 68 C. C. A., 453, quoted in *Houston v. Traction Co.*, supra: "The contention of the company amounts to this: that if the wires were properly installed it cannot be held responsible for their being out of repair, unless it is proved that they got out of repair through its own fault. But this loses sight of the duty of the company not only to make the wires safe at the start, but to keep them so. They must not only be put in order, but kept in order. The obligation is a continuing one. The safety of patrons and the public permits no intermission. Constant oversight and repair are required and must be furnished." The company was required on its own responsibility to make reasonable inspection, and what is reasonable inspection is generally a question for the jury.

That there is evidence of negligence on the part of the Railroad Company in "shunting" or "kicking" its cars needs no citation of authority; the contested question is whether such negligence proximately caused or concurred in causing the intestate's death. On this point there was evidence tending to show that when the derailed car struck the guy or

cable the post was jarred and "looked like it might fall"; that a little blaze ran up a few minutes about the second cross-arm on the pole, on which two loose wires were hanging; that a noise like "spitting" or "a racket something like frying" was heard; that the blaze was evidence of an arc, that is, electricity passing from one wire to another; that if wires of high and low voltage crossed and there was an arc between them an electric current could pass from the wire of high voltage to the one of low voltage; that the flame was probably caused by a short circuit; that if there is no atmospheric disturbance there will be no flame "if everything is functioning properly"; and that if a "frying sound was heard there was something wrong." There was evidence that the cable was struck about 2 or 3 o'clock on the afternoon of 18 April, and that soon thereafter electrical disturbance was noticed in a garage, a hardware store, and on a clothes line, each separate wire communicating with the transformer on the pole. Proof of these circumstances was competent in corroboration of the plaintiff's contention.

The evidence precluded dismissal of the action. In a motion to nonsuit, the plaintiff must be given the advantage of every inference that may reasonably be drawn from the testimony of the witnesses; and the testimony thus considered is susceptible of the construction that the intestate's death was proximately caused by the concurring negligence of the defendants. The motion for nonsuit was therefore properly denied.

The exception to the court's apportionment of challenges is addressed to the exercise of discretion which has not been abused, if it be admitted that the interests of the defendants are antagonistic. Moreover, the decision of the judge as to the nature of the interests and the number of challenges is final. C. S., 2331, 2332.

The facts assumed in the hypothetical question which is the subject of the tenth exception are sufficiently supported by the evidence to overcome the appellants' objection to its admission; and as to the twelfth, we do not see that the record of a compromised suit between the plaintiff and some of the next of kin of the deceased is competent as bearing upon the question of damages, the only purpose for which it was offered. The measure of damages as a legal question could not be affected or modified by the estimate set by the plaintiff or any other person as a just compensation for the pecuniary injury resulting from the intestate's death. This was a matter exclusively for the jury. The remaining exceptions to the admission of evidence present no question which calls for discussion.

Exception was taken to the instruction that there may be more than one proximate cause; but in the law of negligence no rule is better settled than this: there may be more than one efficient proximate cause

of an injury. 21 A. & E. (2 ed.), 495; *Harton v. Telephone Co.,* 141 N. C., 455, 461; *Bagwell v. R. R.,* 167 N. C., 611, 616; *White v. Realty Co.,* 182 N. C., 536; *Mangum v. R. R.,* 188 N. C., 689.

We have given to each of the other exceptions our careful attention, and are of opinion that the record presents no error entitling the defendants, or either of them, to a new trial.

We are aware of the uncertainty with which, the defendants say, their evidence has clothed the circumstances of the intestate's death, including the time that elapsed between the alleged damage to the transformer and the injury to the deceased; but unless reversible error in law was committed, it is not our province to interfere with the verdict or judgment and to award the defendants another hearing. We find the record, presenting the exceptions of both defendants, to be free from error.

No error.