S. L. ARRINGTON, ADMINISTRATOR OF MAMIE MORGAN, v. TOWN OF PINETOPS AND HOOKERTON TERMINAL COMPANY; AND MANDY MURPHY v. TOWN OF PINETOPS AND HOOKERTON TERMINAL COMPANY.

(Filed 18 September, 1929.)

1. **Electricity A a—Company transmitting electricity must use care commensurate with danger therefrom.**

   A company engaged in the transmission of deadly electric currents by wires strung on poles is held to a high degree of care in the maintenance of this equipment commensurate with the danger, and its failure in this duty renders it liable in damages for injuries proximately caused thereby.

2. **Electricity A d—Evidence that third person impaired power line and left it in dangerous condition sufficient to be submitted to jury in this case.**

   Where there is evidence tending to show that a company authorized to do so entered on land upon which power lines were maintained, and excavated sand and gravel therefrom, and in so doing, undermined one of the poles upon which transmission wires were strung so that the pole

slipped down until the wires hung about five feet from the ground at a place where it could be reasonably anticipated injury would likely result, and that the company left the wires in this dangerous condition, and that a child caught hold of one of the wires and was killed thereby: *Held*, the evidence was sufficient to take the case to the jury upon the issue of the defendant's actionable negligence.

3. **Electricity A c—In this case held: evidence of failure of town to keep its power line in reasonable repair sufficient to be submitted to the jury.**

Where an incorporated town owns and maintains its own poles and wires for the transmission of electricity from another town from which it buys its power, and there is conflicting evidence that it permitted one of its poles carrying a high voltage wire to remain for a month or more fallen so that the wire hung only five feet from the ground, the question of whether the town, in the exercise of due care, should have discovered and made the necessary repairs is for the jury, and is properly submitted to them upon the issue of its secondary liability for the negligent killing of the plaintiff's intestate in an action against the town and the company impairing the power line.

4. **Electricity A b—In this case held: defendants may not avoid liability on ground that intestate killed by power line was trespasser.**

Where the defendants in an action for the negligent killing of plaintiff's intestate are guilty of negligence proximately causing the injury, in impairing and failing to properly maintain a power line, they may not avoid liability on the ground that plaintiff's intestate was a trespasser when the father of the plaintiff's intestate rented and cultivated a field eleven steps from the power line, and his child was killed by coming in contact with a wire permitted to remain five feet from the ground, the doctrine of attractive nuisances applying under the facts of this case.

CIVIL ACTION, tried before *Small, J.*, at April Term, 1929, of EDGE-COMBE.

The evidence tended to show that John R. Pitt owned certain land in Edgecombe County, and on 23 May, 1922, conveyed to the town of Pinetops a right of way across his land for the purpose of erecting a transmission line. This deed was recorded on 8 December, 1926. The town of Pinetops purchased electric power from the town of Tarboro, and in order to convey said power from Tarboro to Pinetops, erected a power line consisting of poles and wires. The line carried thirteen thousand volts of electricity, but this voltage was "stepped down" at Pinetops to twenty-three hundred volts. The poles carrying the power were from thirty-five to thirty-seven feet in height and were erected on top of the bank of a "pretty deep cut" on the right of way of the East Carolina Railway Company. On or about 17 June, 1926, Pitt, the owner of the land, entered into an agreement with the Hookerton Terminal Company by the terms of which the said company was authorized to remove sand and gravel from the area on which the poles were situ-

ated.   There was further evidence that Louis Morgan, father of the plaintiff, Mamie Morgan, rented a crop from Pitt for the year 1926, and was cultivating cotton in a field bordering the transmission line.   The edge of Morgan's cotton field was only eleven steps from the power line. There was further evidence tending to show that prior to 6 December, 1926, the Hookerton Terminal Company, in excavating sand and gravel, had undermined one of the poles of said transmission line, which caused the pole to drop down into the excavation, leaving the wires thereon from five to seven feet above the ground on the top of the embankment. On 6 December, 1926, Mamie Morgan, a child about twelve years and ten months old, went into the woods adjoining the field of her father. Coming back from the woods to her work in the field she stopped at the pole in controversy, apparently looking over the embankment into the sand pit below.

The half sister of the deceased, the only eye witness, gave the following narrative: "We came back from the woods and passed by the pole coming back about a yard from it; we stopped and were looking at the sand digger; it was not working.   I didn't see anybody on it; we didn't stay there long; I turned around and was coming back to the field and missed Mamie; when I turned to go back to the field is when I missed Mamie; I heard a roaring; I hollered and called Gus and looked around. I saw Mamie standing there; she couldn't get away; her right hand up above her head; she was not so far from the edge of that place; I don't think she was standing on her tiptoes, the best I can remember her hand that was sticking up was touching the wire.   I had my back to her and turned around and saw her, and she was standing on the ground, had one hand up above her head on the wire; she didn't stay there long.   I screamed and called Gus and Mandy, and Mandy pulled Mamie away, and the wire slung her off.   She lay flat on her back on the ground. . . .   We walked straight under the wire and looked over the embankment; I peeped over there."

Apparently Mamie Morgan was killed instantly.

The other plaintiff, Mandy Murphy, sister of Mamie Morgan, testified that she heard hollering and looked and saw her sister Mamie on the wire.   She said: "I ran there to pull her away, and when I was pulling her away the electricity from her drew me to the pole.   I don't remember anything else that happened because I was speechless, and when I came to I was at the house.   I felt just like somebody dead, and my left foot and right hand were burned."

There was testimony that from the point where the pole rested on the top of the bank to the wires was about five feet.   There was also testimony to the contrary.   There was also evidence tending to show that the pole had been in the condition described by witnesses from about 16

October, 1926. There was also strong testimony offered by the defendants to the effect that the pole had been inspected a few days before the death of Mamie Morgan, and that it was then standing and had not been undermined.

The cases were consolidated, and issues of negligence, contributory negligence, and primary and secondary liability were submitted in both cases. The jury answered all the issues in favor of plaintiffs, awarding $1,500 damages in the death case and $250 damages in the case of Mandy Murphy. The verdict also established primary liability against the defendant, Hookerton Terminal Company, and secondary liability against the town of Pinetops.

From judgment upon the verdict both defendants appealed.

*Battle & Winslow* for plaintiff.
*Henry C. Bourne* for Hookerton Terminal Company.
*Albion Dunn, H. H. Phillips* and *J. L. Bridgers* for Town of Pinetops.

BROGDEN, J. The plaintiffs seek to recover damages from both defendants upon two theories:

1. That the defendant, Hookerton Terminal Company, negligently excavated around the pole, causing it to slip into the cut and thus leaving the wires, carrying an enormous voltage, only five feet above the ground and adjacent to a cultivated field.

2. That the town of Pinetops was negligent in not discovering the condition of said pole and permitting it to remain in a dangerous situation for an unreasonable length of time.

In *Ellis v. Power Co.,* 193 N. C., 357, 137 S. E., 163, it is declared: "that electric power is an industry-producing agency, and the hydroelectric development has been one of the greatest factors in the State's progress, and especially its industrial expansion. Every legitimate encouragement should be given to its manufacture and distribution for use by public utility corporations, manufacturing plants, homes, and elsewhere. On the other hand, the highest degree of care should be required in the manufacture and distribution of this deadly energy and in the maintenance and inspection of the instrumentalities and appliances used in transmitting this invisible and subtle power."

The principles of law creating liability have been declared and reiterated in many decisions of this Court. *Harrington v. Wadesboro,* 153 N. C., 437, 69 S. E., 399; *Ferrell v. Cotton Mills,* 157 N. C., 528, 73 S. E., 142; *Ferrell v. R. R.,* 172 N. C., 682, 90 S. E., 893; *Graham v. Power Co.,* 189 N. C., 382, 127 S. E., 429; *Helms v. Power Co.,* 192 N. C., 784, 136 S. E., 9; *Ellis v. Power Co.,* 193 N. C., 357, 137 S. E.,

163; *Ramsey v. Power Co.,* 195 N. C., 788, 143 S. E., 861; *Murphy v. Power Co.,* 196 N. C., 484, 146 S. E., 204. In *Graham v. Power Co.* this Court approved the rule of liability announced by the Court of West Virginia in *Love v. Virginia Power Co.,* 86 W. Va., 393. The rule is thus stated: "A company maintaining an electric line, over which a current of high and dangerous voltage passes, in a place to which it knows or should anticipate others lawfully may resort for any reason, such as business, pleasure, or curiosity, and in such manner as exposes them to danger of contact with it by accident or inadvertence, is bound to take precaution for their safety by insulation of the wire or other adequate means." The principle underlying the rule is to the effect that, when any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to other persons, known or unknown, the law imposes as a public duty the obligation to exercise such care and skill. *Ferrell v. R. R.,* 172 N. C., 682. Again in *Helms v. Power Co.,* 192 N. C., 784, this Court declared: "Electric companies are required to use reasonable care in the construction and maintenance of their lines and apparatus. The degree of care which will satisfy this requirement varies, of course, with the circumstances, but it must always be commensurate with the dangers involved, and where the wires maintained by a company are designed to carry a strong and powerful current of electricity, the law imposes upon the company the duty of exercising the utmost care and prudence consistent with the practical operation of its business, to avoid injury to those likely to come in contact with its wires."

Applying these principles to the case at bar, it is obvious that permitting an uninsulated wire, carrying thirteen thousand volts of electricity, to remain only five feet from the ground, near a cotton field, where people are constantly at work, created a dangerous situation. Under such circumstances severe injury or death ought reasonably to have been anticipated. In effect the defendant, Hookerton Terminal Company, undermined a pole, causing it to slip down until high powered wires were within five feet of the ground. To leave a live wire charged with deadly current in such condition was evidence of negligence to be submitted to the jury.

The question as to whether the town of Pinetops, in the exercise of due care, should have discovered the condition of the wire and to have made the necessary repairs, was a question of fact for the jury. Certainly this Court cannot declare, as a matter of law, that the town of Pinetops was free from negligence under the facts and circumstances disclosed at the trial of the cause.

The Hookerton Terminal Company insists that the little girl was a trespasser upon its property and that her administrator should not be

allowed to recover. The identical contention was made in the case of *Ferrell v. R. R.*, 172 N. C., 682. The Court, however, in disposing of this defense, says: "It is undoubtedly the general rule that a trespasser cannot maintain an action against the owner for negligent injuries received by reason of conditions existent upon the premises, but this is a principle growing out of and dependent upon the right of ownership and considered essential to their proper enjoyment." . . .

Louis Morgan, father of plaintiff, testified that he rented the land up to the right of way of the railroad. If so, he and his children, in cultivating the cotton field, had a right to use the land, and the defendant, Hookerton Terminal Company, was charged with notice that these children were working in the field only eleven steps away, and that they had a right to use the woods for any lawful purpose. While there was no pathway or walkway at the place where the pole was excavated, still these children, doubtless attracted by the machinery and sand pit, could not be reasonably held as trespassers in a legal sense because they came up to the bank out of curiosity and peeped over into the sand pit.

No error.