W. M. TAFT v. F. P. COVINGTON and WIFE, SUSAN H. COVINGTON, and W. E. EWING and WIFE, JOSIE EWING.

(Filed 16 June, 1930.)

1. **Husband and Wife B e—A married woman may execute certain executory contracts and is liable on negotiable instrument signed by her.**

　　A married woman may now make executory contracts as binding as if she were a *feme sole,* C. S., 2507, with certain restrictions, C. S., 2515, and

when she has executed a note as co-maker with her husband, a holder in due course for value, may accordingly enforce collection thereof against her as a person primarily liable on the note, and absolutely required to pay it. C. S., 2977.

**2. Bills and Notes A a—Consideration for negotiable instrument is presumed.**

It is prima facie presumed that a negotiable instrument is supported by valuable consideration, C. S., 3004, and that all signers thereof are parties and liable thereon; partial failure of consideration is a defense *pro tanto* whether in an ascertained or unliquidated amount. C. S., 3008.

**3. Same—Wife may not set up want of consideration as against holder of negotiable note signed by her.**

Where a husband and wife execute a purchase-money negotiable note for lands conveyed to him and secured by a mortgage, and suit against them is brought on the note, the *feme covert*.may not set up the defense of want of consideration moving to her or give evidence to that effect in contradiction of the negotiable instrument she has signed with her husband, her remedy being by suit to reform the instrument for mutual mistake or mistake induced by fraud in order for the defense that she signed the note merely to convey her dower right to be available to her.

**4. Bills and Notes D b—Accommodation party is liable to holder of note in due course for value.**

One signing a negotiable instrument as an accommodation party, having received no value, is bound to the payment thereof to a holder for value in due course though taking with notice, C. S., 3009, and a maker of the instrument engages that he will pay it in accordance with its tenor, and admits the existence of the payee and his capacity to endorse. C. S., 3041.

**5. Bills and Notes H a—The burden of proving lack of consideration for note is on the defendant, the note having been proven.**

In an action on a note the burden of proving lack of consideration therefor is on the defendant, the execution of the note having been established, and where in an action on a note the plaintiff introduces the note signed by a husband and wife given for the purchase price of a tract of land sold to the husband, the wife is not entitled to a directed verdict on the plaintiff's evidence on the theory that she signed the note only in order to convey her dower right in the land, she having introduced no evidence.

APPEAL by plaintiff from *Stack, J.,* at September Term, 1929, of MONTGOMERY. Reversed.

The plaintiff on 4 March, 1920, sold and conveyed to F. P. Covington and W. E. Ewing a tract of land in Montgomery County, containing about 129 acres. To secure the payment of the purchase money, on the same day, the following note, secured by mortgage on the land, was made to plaintiff:

TAFT *v.* COVINGTON.

"$2,678.00.                    Mount Gilead, N. C., 4 March, 1920.

Six months after date, for value received, we promise to pay to the order of W. M. Taft, twenty-six hundred and seventy-eight no/100 dollars,

Negotiable and payable without offset at the office of the Bank of Mount Gilead, Mount Gilead, N. C., with interest after date, at the rate of 6 per cent per annum, until paid. The drawers and endorsers and all sureties hereto severally waive presentment for payment, protest and notice of protest and nonpayment of this note, and all defenses on the ground of any extension of time of its payment that may be given by the holder or holders, to them or either of them. Witness our hands and seals. This note secured by first mortgage on real estate.

F. P. COVINGTON

SUSAN H. COVINGTON ˙ (Seal.)

W. E. EWING

JOSIE EWING          (Seal.)

On back:

    June, 1920, paid $85.83.

    25 July, 1927, paid $426.00."

The deed and mortgage were duly recorded. This action is to recover of the defendants the principal of the note with interest, less credits of $426.00 and $85.83, and to foreclose the mortgage.

Plaintiff also sues to recover for certain taxes paid by plaintiff assessed on the land and the penalty. Plaintiff proved the execution of the note and mortgage by defendants, placed same in evidence and made demand and showed nonpayment.

The plaintiff testified, in part, on cross-examination:

"I think this was all the same date, I took mortgage as security for the note. They paid no money. I bought this land and sold it to Mr. Covington and Ewing right away. Mr. A. D. Bowles, of Pekin, made me the deed. Mr. Covington worked up the trade. He was not representing me in transaction of this kind.

Q. (by the court) This note that was given for the purchase price of the land? Answer: Yes sir. Plaintiff objects; overruled; exception.

Q. And the mortgage secured the note? Answer: I did not understand it secured the note.

Q. Did these women get anything by the transaction, except their husbands got the land? Plaintiff objects; overruled; exception. Answer: Not that I know of.

Q. Did you not pay them anything to sign it? Answer: No, sir; it is all one transaction in a way, but my understanding is, when anybody signs a note this is a promise to pay.

Q. The deed to the land and the mortgage and the note was in pursuance of one agreement wasn't it? Plaintiff objects; overruled; exception. Answer: Yes, sir.

Q. State whether or not you accepted the signatures of F. P. Covington and W. E. Ewing to the mortgage and the note as the sole security for the payment of the purchase price thereof. Defendant objects; overruled; exception. Answer: I did not.

Q. (by the court) What did they get for signing the paper? Answer: I don't know whether they got anything or not.

Q. Did you sell any land to the women? Answer: No.

Q. Did you have any conversation with them about the land? Answer: No.

Q. State whether or not the signatures of Mrs. Susan H. Covington and Mrs. Josie Ewing was part of the consideration moving to you for the sale of this land to their husbands? Defendants object; overruled; exception. No answer.

Q. State why you obtained the signatures of Mrs. Covington and Mrs. Ewing to the note? Defendants object; overruled; exception. Answer: I considered the note was stronger with their signatures. Stronger note, worth more money, better security than just the deed of trust."

. The plaintiff excepted to the issues as tendered and also tendered issues which the court below refused and plaintiff excepted.

The issues submitted to the jury and their answers thereto, were as follows:

"1. In what amounts, if anything are the defendants, F. P. Covington and W. E. Ewing, indebted to the plaintiff on the note and mortgage sued on? Answer: $3,824.50 (by consent).

2. In what amount, if anything, are the defendants, Susan H. Covington and Josie Ewing, indebted to the plaintiff on the note and mortgage sued on? Answer: Nothing."

On the second issue the plaintiff requested the court below to give the following charge: "If the jury believes the evidence, or any part thereof, and find the facts in accordance therewith, they are instructed to answer the second issue $3,824.50." The court below refused this instruction. Plaintiff excepted.

At the close of plaintiff's evidence, the defendants not having submitted any evidence, the court stated that he would charge the jury that, if they believed the evidence and found the facts in accordance

therewith he would instruct them that the defendants, Susan H. Covington and Josie Ewing, signed the mortgage and note set out in the complaint for the purpose of barring their dower rights only, and that the jury should answer the second issue submitted to the court, Nothing." To this charge plaintiff excepted.

Plaintiff duly made assignments of error to the exceptions taken above and appealed·to the Supreme Court.

*Armstrong & Armstrong for plaintiff.*
*Poole & Bruton for defendants.*

CLARKSON, J. We think the evidence excepted to by plaintiff and to which he assigned error, and the request by plaintiff for prayer for instruction, should have been granted.

The mortgage made by F. P. Covington and W. E. Ewing to the plaintiff for purchase money on the land they purchased from plaintiff need not have had the joinder of their wives to be effectual to pass the whole interest, according to the provisions of the mortgage. C. S., 4101. This is immaterial, as we are dealing with defendants' liability on the note. *Trust Co. v. Black,* 198 N. C., at p. 221. The note is negotiable. Susan H. Covington and Josie Ewing, being *sui juris,* signed the negotiable note with their husbands, the note reciting "for value received." C. S., 3166.

C. S., 2507, is as follows: "Subject to the provisions of section 2515 of this chapter, regulating contracts of wife and husband affecting corpus or income of estate, every married woman is authorized to contract and deal so as to affect her real and personal property in the same manner and with the same effect as if she were unmarried, but no conveyance of her real estate shall be valid unless made with the written assent of her husband as provided by section six of Article X of the Constitution, and her privy examination as to the execution of the same taken and certified as now required by law." The effect of the Martin Act (this section) is to take married women out of the classification which the law recognized, prior to its enactment, and to make them, with respect to capacity to contract, *sui juris.* This section is held to mean what it plainly says, that, except as to contracts with her husband, in which the forms required by section 2515, must still be observed, and except in conveyances of her real estate, in which case her privy examination must still be taken and her husband's written consent had, a married woman can now make any and all contracts so far as "to affect her real and personal property," in the same manner and to the same effect as if she were unmarried. N. C. Code, 1927 (Anno.), p. 853, citing numerous authorities.

C. S., 2977 : "The person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable." A surety on an instrument comes squarely within the definition of a person whose liability is primary, for he is, by the terms of the instrument, absolutely required to pay the same. *Rouse v. Wooten,* 140 N. C., 557, 559. Joint makers upon the face of a negotiable instrument are deemed to be primarily liable thereon, and in an action upon the note the burden is upon the defendants to prove any matter in release. *Roberson Co. v. Spain,* 173 N. C., 23; *Howell v. Roberson,* 197 N. C., at p. 573-4.

C. S., 3004 : "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and every person whose signature appears thereon to have become a party thereto for value."

C. S., 3008 : "Absence or failure of consideration is matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

C. S., 3009 : "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

C. S., 3041 : "The maker of a negotiable instrument by making it engages that he will pay it according to its tenor, and admits the existence of the payee and his then capacity to indorse."

In *Hunt v. Eure,* 188 N. C., 716, the note was payable to J. Marvin Hunt, and it was held unnegotiable and a consideration is not presumed and must be both averred and proved. At p. 719 it is said: "In such case the burden of proving a consideration is upon the plaintiff. If the note, though unnegotiable as in the present case, recites value, the plaintiff makes out a prima facie case by showing the execution and delivery of the note. If the defendant then offers evidence tending to establish a failure of consideration, the burden remains with the plaintiff to satisfy the jury by the preponderance of all the evidence that the contract is supported by a valuable consideration. The defendant when sued on a nonnegotiable paper is not required under our decisions to rebut the prima facie proof of value by the greater weight of the evidence."

In *Swift & Co. v. Aydlett,* 192 N. C., at p. 348, we find : "The note, being in form a negotiable instrument, imports prima facie a consideration, and where the defense of failure or want, of consideration is inter-

posed to defeat a recovery, as in the instant suit, the burden, of course, is on the maker to establish the defense by the greater weight of the evidence. *Piner v. Brittain,* 165 N. C., 401; *Hunt v. Eure,* 188 N. C., 716."

*Cowan v. Williams,* 197 N. C., 433: "It would seem that the plea of *nudum pactum* is not open to the defendant, Lucy Williams, as against the plaintiff, who is a holder in due course of the note sued on. Hence the instruction, above set out, which forms the basis of one of the plaintiff's exceptions, we apprehend, should be held for error. *Angier v. Howard,* 94 N. C., 27. A note under seal imports consideration, and it is presumed from the use of a seal, that the consideration is good and sufficient," citing numerous authorities.

In *Building & Loan Association v. Swaim,* 198 N. C., 14, the wife gave a note to the Building & Loan to pay her husband's defalcation. At pp. 17 and 18, it is said: "There was no new consideration for the defendant's note. The initial debt was not canceled and the plaintiff is not precluded from proceeding against the debtor's estate. The widow by executing the note has received no benefit; she has acquired nothing from her husband's estate that she would not have been entitled to if she had not given the note. The estate of A. R. Swaim is insolvent, and so is the defendant. The transaction in question, as was said in *Paxson v. Neilds, supra* (187 Pa. St., 385, 21 A. S. R., 888), is 'a one-sided affair, and exclusively for the benefit' of the plaintiff."

*Trust Co. v. Black,* 198 N. C., at p. 221: "The note does not recite a special consideration; it was given 'for value received' and was 'secured by a deed of trust on real estate.' The makers were primarily liable jointly and severally. C. S., 458, 3041, 3166; *Roberson v. Spain,* 173 N. C., 23. The unity of person is an incident of the estate created by the conveyance to Black and his wife; it is not incident to the note."

The defendants are married women and *sui juris,* under our statute, and can contract as if unmarried, with certain exceptions. Having signed the negotiable note, they were joint makers and are deemed to be primarily liable thereon, and in an action on the note the burden is on the defendants to allege and prove any matter in release.

In *Royal v. Southerland,* 168 N. C., at p. 406-7, it is written: "By the enactment of the Martin Act, conferring the capacity to contract on married women as if they were *femes sole,* when she signs and delivers a note, though it may be as surety, in reference to the creditor or holder the obligation is hers and not his, and the constitutional provision referred to has no application. It was further contended that his Honor committed error in excluding testimony tending to show certain repre-

sentations on the part of the husband to the wife as to the effect of putting her signature on the note, but there is no claim or suggestion that these representations were made known to the payee of the note or that he had any part in them. The note is under seal and given for valuable consideration, and, under the circumstances appearing, the representations to the wife by the husband may not be allowed to affect the creditor. Again, it is insisted that error was committed in not allowing the *feme* defendant to testify that in signing the note and mortgage to secure the same she only intended to pledge her land for the debt, and did not intend to come under any further obligation; but this would be in express contradiction of her written note, and it is well understood that when the entire agreement is in writing and the language is clear and meaning plain, the same may not be contradicted or varied by parol. In such case, and in the language of the *Chief Justice* in *Walker v. Venters,* 148 N. C., 388, 'The written word abides.' *Deering v. Boyles,* 8 Kans., 529." *Tice v. Hicks,* 191 N. C., 609.

In *Estes v. Rash,* 170 N. C., at p. 342, speaking to the subject, it is said: "We assume, that the defense to the action which is set up by the *feme* defendant indicated that she intended to show, by parol evidence, that she signed the mortgage on the land of her husband for the purpose of releasing any marital interest she had in the same and not for the purpose of becoming bound for the debt, and, as this varied and contradicted the written contract, it could not be done (*Royal v. Southerland,* 168 N. C., 405), but the *feme* defendant should have proceeded beforehand by an action to have the instrument which evidenced a promise to pay the debt corrected or reformed so as to express the true intention of the parties, if it had been otherwise written by their mistake, or by her mistake, induced by the fraud of the other party."

In *Wilson v. Vreeland,* 176 N. C., at p. 506, we find: "Both Dockery and his wife were liable to the bank and Mr. Long, the accommodation endorser, for all the debt; but as between themselves they were severally liable for one-half. He was not legally bound to his wife for the payment of her half, though he was so bound to the creditors."

For the reasons given, the judgment of the court below is

Reversed.