**DUKE POWER CO.**

v.

**MULLINAX.**

No. 6812.

United States Court of Appeals Fourth Circuit.

Argued June 16, 1954.

Decided July 14, 1954.

**432**

Huger S. King, Greensboro, N. C. (W. S. O'B. Robinson, Jr., Charlotte, N. C., on the brief), for appellant.

Arthur O. Cooke, Greensboro, N. C. (C. C. Frazier, Sr., Frazier & Frazier and Cooke & Cooke, Greensboro, N. C., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

Margaret S. Mullinax, Administratrix, instituted this civil action in the Superior Court of Guilford County, North Carolina, from which it was removed to the United States District Court for the Middle District of North Carolina, to recover damages for the death of her intestate, Willis W. Mullinax, allegedly caused by the negligence of appellant, Duke Power Company.

Appellant entered a motion to dismiss at the conclusion of appellee's evidence, a motion for a directed verdict at the conclusion of all the evidence, and a motion to set aside the verdict of the jury, which found for appellee, on the two questions of the primary negligence of defendant and the contributory negligence of decedent. All these motions were denied by the District Judge and the rulings on these motions have been appealed to us. Judgment was entered for plaintiff in the sum of $15,000.00.

■ The two questions thus presented for our decision are the sufficiency of the evidence to sustain the jury's findings of negligence on the part of Duke Power Company and an absence of contributory negligence on the part of decedent.

Since we believe there was ample evidence to support these findings of the jury, the verdict and judgment of the District Court must be sustained.

Decedent was an electrician who, on August 1, 1951, was assigned by his employer to the task of installing additional wiring to certain premises in Greensboro, North Carolina. Two fellow employees accompanied decedent for the performance of this job.

The premises on which the new wiring was required consisted of a two story brick building. The electrical power connection between this building and the main transmission lines of appellant was composed of a three line "service drop" which was attached to the building some eighteen feet above the ground. One metal conduit led from this junction point to a meter box near the ground and another led into the building.

Proper installation required that the new wiring be led down the conduit from the junction point, eighteen feet above the ground, to the meter box. This, in turn, necessitated that an electrician mount a ladder placed against the building in order to feed the new wiring from above down through the conduit. Decedent undertook this part of the job, and there was ample evidence to prove that there was no other reason-

able method for performing this operation.

While standing at the top of the ladder, inserting the new wires, anyone would necessarily have been in close proximity to the "service drop" of appellant. Decedent made bodily contact with this "service drop," thereby sustaining the electrical shock which proved fatal. It was the condition of the wiring and insulation attendant to the "service drop" which formed the basis for all charges of negligence and contributory negligence.

Where the Power Company's wires attached to the junction point on the building the various wires were spliced together. To make such a splice, the regular insulation was cut away for a space of about eight inches, the two connecting wires joined, and, in this case, the bared space was then recovered with electrician's friction tape. Thus, in the very location where decedent was working, and where it should have been foreseeable that an electrician might have been required to work, there was an eight inch space on each of the three "service drop" wires which had been insulated only by the rubberized friction tape.

The City of Greensboro Electrical Code embraced in its entirety the 1951 National Electrical Code and it was stipulated by counsel that this was in effect at the time this death occurred. This National Code provides, in part:

> "Article 230—Services—General Requirements. 2303. *Insulation of Service Conductors.*
>
> "Service conductors shall have an insulating covering which will normally withstand exposure to atmospheric and other conditions of use and which shall prevent any detrimental leakage of current to adjacent conductors, *objects,* or the ground." (Italics ours.)

And under Article 110, Section 1118 of this Code, it is provided:

> "1118. Splices. * * * All splices and joints and the free ends of conductors shall be covered with an insulation equivalent to that on the conductors."

The tragic facts of the present case testify amply to the leakage in the spliced wires of the Power Company. Opposed to this there is the direct testimony of W. B. Sewell, a fellow electrician with many years of experience, that the same wires under the usual, weatherproof insulation are incapable of causing a shock.

██ Whether the instant friction tape had merely "weathered" to permit leakage or whether it had rotted completely away, leaving the bare wires exposed, is immaterial to a determination of appellant's negligence. The North Carolina Supreme Court has consistently ruled that power companies should be held to a strict compliance with the laws designed to protect the public from injury or death resulting from the furnishing of electrical current, and that the highest or "utmost" degree of care and "constant vigilance" is required in the inspection and maintenance of their wires in proper condition. Turner v. Asheville Power & Light Co., 167 N.C. 630, 83 S.E. 744; Mitchell v. Raleigh Electric Co., 129 N.C. 166, 39 S.E. 801, 55 L.R.A. 398; Haynes v. Raleigh Gas Co., 114 N.C. 203, 19 S.E. 344, 26 L.R.A. 810.

In Turner v. Asheville Power & Light Co., supra, the court said, at 83 S.E. at page 744:

> "We have said in many cases that, while the law does not regard companies furnishing electric power and lights to its patrons as insurers against injury, yet such companies owe to the public, as well as to their patrons, the duty to protect them by exercising a high skill, the most consummate care and caution, and the utmost diligence and foresight in the construction, maintenance, and inspection of its plant, wires, and appliances, consistent with the practical operation of the business."

██ Appellant contends, in reply to this, that the mere fact that the wires were eighteen feet above the ground constituted insulation by isolation and that it was utterly unforeseeable that anyone would have occasion to be in close proximity to the splice here involved.

The circumstances attendant upon the present additional installation patently belie this argument; and the North Carolina law, as enunciated by its highest Court, sustains a holding that appellant was charged with the foreseeability of consequences such as those involved in the instant case. Benton v. North Carolina Public Service Co., 165 N.C. 354, 81 S.E. 448. And see Arrington v. Town of Pinetops, 197 N.C. 433, 149 S.E. 549; Lawrence v. Yadkin River Power Co., 190 N.C. 664, 130 S.E. 735.

On the basis of the North Carolina law, so clearly set out in the cases, and from the facts presented by the record in the case before us, we can only conclude that a finding of negligence as to appellant found substantial support in the evidence.

There remains the question of the contributory negligence of decedent. While this presents a closer question, it appears that there was substantial conflict in the testimony as to many facts which might have indicated that decedent failed to exercise reasonable care.

There was conflict as to the condition of the friction tape at the splice; there was conflict as to whether the method adopted for accomplishing this job was the only way the task could have been performed; no one saw decedent when he actually made the fatal contact with the wires, which leaves to surmise his precise course of action; and there was a direct conflict on the question of whether decedent had been warned as to any danger from the wires.

Appellant relies upon several cases wherein contributory negligence was held to obtain as a matter of law. In all these cases, however, it appears that the injured party not only knew of the hazardous condition but also intentionally and voluntarily made the move which established the injurious contact.

In the present case, we think the conflicts in the evidence were quite properly submitted to the jury who alone could determine the condition of the insulation, the propriety of the method adopted for performing the work, the question of decedent's having been forewarned, and the actual cause of the contact. Essick v. City of Lexington, 233 N.C. 600, 65 S.E.2d 220; Peters v. Carolina Cotton & Woolen Mills, 199 N.C. 753, 155 S.E. 867; Helms v. Citizens' Light & Power Co., 192 N.C. 784, 136 S.E. 9. It could even have been reasonably inferred from the evidence that the splice *appeared* to be properly insulated, thereby creating a "booby trap" which misled decedent into placing *unwarranted confidence in the* safety of the insulation.

We hold, therefore, that the questions of the primary negligence of appellant and the contributory negligence of decedent were properly submitted to the jury and the verdict should not be disturbed.

The judgment of the District Court is, accordingly, affirmed.

Affirmed.