## APPLICATION OF THE LAW OF NEGLIGENCE WHERE A BANK ON UNENCLOSED PREMISES CAVED.

THE ANN ARBOR RAILROAD CO. v. ARTHUR KINZ, BY HIS NEXT
FRIEND, GEORGE KINZ.

Decided, April 28, 1903—68 Ohio State, p. 210.

*Boy Enters Unenclosed Premises—Where Adults Not Invited—Bank*
    *Caves In—Owner Not Liable—Where Condition Does Not Indicate*
    *Probability of Such Result—Law of Negligence.*

The owner of an unenclosed tract of land within a city, which has
    been graded to a level, leaving a bank on one side of the premises,
    to which premises adults are not invited, but suffered to resort
    for the purpose of playing baseball, which amusement attracts
    to the ground and along the bank young boys to witness the games,
    is not liable for injury to one of such boys, caused by the caving
    or falling of the top of the embankment, where its condition does
    not, to the knowledge of such owner, indicate a reasonable prob-
    ability of such result.

Error to the Circuit Court of Lucas County.

The plaintiff below, who is now defendant in error, commenced
his suit against the plaintiff in error to recover damages for injury
to his person occasioned by the caving of a bank of earth on the
premises owned by the railroad company.

As the ruling on a demurrer to the petition is assigned as one

of the errors committed by the lower courts, the entire petition, omitting the caption, is set out as follows:

"The plaintiff, Arthur Kinz, is a minor of the age of thirteen years, and brings this action by his next friend, George Kinz.

"The defendant is a railroad corporation engaged in operating and managing a railroad in Lucas county, Ohio, and prior to the time of the occurrences herein complained of was changing the terminus of its road and relaying and changing some of its tracks. In so doing, for the purpose of filling in another part of its roadbed, it made an excavation at a natural bank of ground at a place between Bush and Magnolia streets and opposite Kuper street and near the track of the Wheeling & Lake Erie railroad in the city of Toledo. Said excavation was made by a steam shovel in operating which the said defendant took out a large amount of earth and dirt and left a perpendicular bank of clay some twelve or fourteen feet high and extending several rods in length. This precipitous bank of clay thus left was dangerous by virtue of the fact that earth from the upper part was likely to fall at any and all times, and had been left in such condition since some time in July, 1895, during which time the said defendant was daily running heavy trains on its tracks, which had the tendency to make said bank of earth more loose, and at the time of the occurrences herein complained of the earth was, and had been for a long time, viz., over six months, liable at any time to slip and fall down and injure persons who might be near the bottom of said bank. And if such there were, they were in danger of being overcome or covered by the slipping and falling earth. The bottom of said place where the excavation had been made was left level with the surrounding country, open and accessible to any person.

"Plaintiff says that the place where said excavation was so made, and the country immediately adjacent to and surrounding the same was, and had been for a long period of time, an open common, unfenced and so situated that it had been in common and general use for many years by people of all ages, and especially by boys for purposes of play.

"The character of the ground, and the dangerous condition of said bank, and the likelihood of its caving in and falling down, and the habit and custom of the public, children and boys, as aforesaid, to be in and about the premises and near to where it was dangerous, was known to the defendant, or by the exercise of ordinary care should have been known, and, it was the duty of the defendant when it made said excavation, to have left the ground in such condition by grading and sloping it down so that it would not be liable to fall down and hurt persons near to the same, or to have placed guards which would prevent people from going where the said danger existed. But the defendant negligently and care-

lessly left this overhanging bank in its dangerous condition without attempting in any way to protect or guard people who might have occasion to be near there, from the danger of the earth falling and hurting them.

"The plaintiff on the twenty-sixth day of August, 1897, was engaged in play near, and about the locality, with other youths and children, as he had frequently done before, and in the course of sport and play came to the bottom of said bank of earth, and without any knowledge of the danger of the same, was engaged in picking into the bank with his fingers, there being no especial warning that the earth was liable to slip down and fall, and the plaintiff, owing to his lack of experience and immature years, not knowing the danger thereof. All of a sudden the overhanging bank of earth fell down and over him and some other youths who were playing with him, with the result that the plaintiff was entirely covered and buried by the earth. The alarm was given and he was, after a short period, dug out in an unconscious and bleeding condition and taken to his home, where he was confined to his bed for two months and to the house for four months.

"Plaintiff says that, as a result of the bank of earth falling upon and burying him, the left side of his face has become paralyzed, the drum of his left ear injured so that plaintiff is unable to hear, and, as he is informed and believes, will be permanently injured, and he will always be unable to hear with his said left ear; that his spine was severely injured; his left eye so injured that the sight thereof will be permanently injured; that his health has been greatly impaired, and, as he is advised, his physical condition permanently weakened and affected. He has suffered great pain and anguish and will continue so to do, and, as he is advised, will always suffer from the results of the casualty complained of. He says that so far as he was concerned he was in the exercise of ordinary care, but that the defendant was guilty of great carelessness and neglect in permitting said bank of earth to remain loose, dangerous, unguarded, and liable to fall down and injure people. He therefore says that the defendant is liable to him for all the damage resulting from said injury, which are ten thousand dollars, for which amount he asks for judgment against said defendant."

The petition was afterwards amended by adding the following averment:

"Plaintiff for amendment to the petition says that he avers that the place where plaintiff received his injury, as in the petition complained, was upon the land of said defendant, and was and had been for a long time prior thereto under the control of said defendant."

The general demurrer to the petition thus amended was over-ruled, to which the railroad company excepted, and then answered admitting its corporate capacity, and that it changed the terminus of its road, relaid and changed some of its tracks, and that in doing so it made an excavation at a natural bank of ground between the streets named in the petition by the use of a steam shovel.

The nature, extent and cause of the injuries to the plaintiff the answer denies, as well as all allegations of wrong or negligence made in the petition; and it alleges that the plaintiff was guilty of negligence which contributed directly to the injuries complained of. This charge of contributory negligence is denied by a reply.

At the close of all the evidence, the railroad company moved the court to direct a verdict in its favor, which was overruled and exception taken.

Certain special charges were requested by the defendant company, which were not given as asked, but were modified, and as modified were given to the jury. A general exception to the charge was entered.

The jury found for the plaintiff and assessed his damages at $1,100. The motion for new trial was overruled and judgment rendered on the verdict. The case was taken on error to the circuit court where the judgment was affirmed.

Error is prosecuted in this court to reverse the judgments of the lower courts. The material and controlling facts are stated in the opinion.

*Smith & Beckwith,* for plaintiff in error, cited and commented upon the following authorities:

*Harriman* v. *Railway Co.,* 45 Ohio St., 11; *Ellsworth* v. *Metheney,* 12 O. F. D., 203; 104 Fed. Rep., 119; *Felton* v. *Aubrey,* 74 Fed. Rep., 350; *Railroad Co.* v. *Aller,* 64 Ohio St., 183; *Heaven* v. *Pender,* 11 Q. B. Div., 503; *Corby* v. *Hill,* 4 C. B. (N. S.), 556; *Lynch* v. *Nurdin,* 1 Q. B. Div., 29; *Southcote* v. *Stanley,* 1 H. & N., 247; *Indermauer* v. *Dames,* 1 L. R. C. P., 274; *Clarke* v. *Chambers,* 3 Q. B. Div., 327; *Bolch* v. *Smith,* 7 H. & N., 736; *Powers* v. *Harlow,* 53 Mich., 507; *Formall* v. *Standard Oil Co.,* 8 Detroit Legal News, 453; Elliott on Railroads, Secs. 1259, 1260; *Clark* v. *Manchester,* 62 N. H., 577; *Frost* v. *Railway Co.,* 64 N. H., 220; *Talty* v. *City of Atlantic,* 92 Ia., 135; *Grindley* v. *McKechnie,* 163 Mass., 494; *Gay* v. *Railway Co.,* 159 Mass., 238;

*Lane* v. *Atlantic Works,* 111 Mass., 136; *Daniels* v. *Railway Co.,* 154 Mass,, 349; *Birge* v. *Gardner,* 19 Conn., 507; *Daley* v. *Railroad Co.,* 26 Conn., 591; *Nolan* v. *Railroad Co.,* 53 Conn., 461; *McAlpin* v. *Powell,* 70 N. Y., 126; *Ratte* v. *Dawson,* 50 Minn., 450; *Gillespie* v. *McGowan,* 100 Pa. St., 147; *Keffe* v. *Railway Co.,* 21 Minn., 207; *O'Conner* v. *Railway Co.,* 10 So. Rep., 678; *Hargreaves* v. *Deacon,* 25 Mich., 1; *Barney* v. *Railroad Co.,* 28 S. W. Rep., 1069; *Bishop* v. *Railroad Co.,* 14 R. I., 314; *Gavin* v. *Chicago,* 97 Ill., 66; *Vanderbeck* v. *Hendry,* 34 N. J. L., 472; *Clarke* v. *Richmond,* 5 S. E. Rep., 370; *Klix* v. *Nieman,* 68 Wis., 271; *Davis* v. *Railway Co.,* 58 Wis., 646; *Walsh* v. *Fitchburg Co.,* 145 N. Y., 301; *Dobbins* v. *Railway Co.,* 41 S. W. Rep., 62; *Barrell* v. *Railway Co.,* 91 Cal., 296; *Peters* v. *Bowman,* 115 Cal., 345; *Catlett* v. *Railway Co.,* 57 Ark., 461; *Richards* v. *Connell,* 6 N. W. Rep., 915; *Indianapolis* v. *Emmelman,* 108 Ind., 530; *Benson* v. *Traction Co.,* 26 Atl. Rep., 973; *Railway Co.* v. *Edwards,* 90 Texas, 65; *Ritz* v. *Wheeling,* 31 S. E. Rep., 993; *Railway Co.* v. *Beavers,* 39 S. E. Rep., 82; 1 Thompson on Negligence, Secs. 1024 to 1051, inclusive.

*Hamilton & Kirby,* for defendant in error, cited and commented upon the following authorities:

*Railroad Co.* v. *Snyder,* 18 Ohio St., 399; *Harriman* v. *Railway Co.,* 45 Ohio St., 11; *Railway Co.* v. *Shields,* 47 Ohio St., 387; *Railroad Co.* v. *Mackey,* 53 Ohio St., 370; *Railroad Co.* v. *Marsh,* 63 Ohio St., 236; *Railroad Co.* v. *Aller,* 64 Ohio St., 183; *Findlay Brewing Co.* v. *Bellman,* 4 Circ. Dec., 22; 9 C. C. R., 277; *Toledo Real Estate & Invest. Co.* v. *Putney,* 10 Circ. Dec., 698; 20 C. C. R., 486; *Railroad Co.* v. *Stout,* 84 U. S., 657; *Birge* v. *Gardner,* 19 Conn., 507; *Bennett* v. *Railroad Co.,* 102 U. S., 577; *Railroad Co.* v. *McDonald,* 152 U. S., 262; *Railroad Co.* v. *Stout,* 84 U. S., 657; *Lynch* v. *Nurdin,* 1 Q. B. Div., 29; *Keffe* v. *Railroad Co.,* 21 Minn., 207; *Powers* v. *Harlow,* 53 Mich., 507; *Townsend* v. *Wathen,* 9 East., 277; *Reynolds* v. *Railroad Co.,* 58 N. Y., 248; *Kane* v. *Railroad Co.,* 128 U. S., 94; *Hayes* v. *Railroad Co.,* 111 U. S., 228; *Smith* v. *Railway Co.,* 90 Fed. Rep., 790; *Railway Co.* v. *Jones,* 95 Fed. Rep., 380; *Keyser* v. *Railroad Co.,* 56 Mich., 559; *Railway Co.* v. *Dunden,* 37 Kan., 1; *Evansich* v. *Railway Co.,* 57 Tex., 123; *Railway Co.* v. *Fitzsimmons,* 22 Kan., 686; *Ferguson*

v. *Railway Co.*, 75 Ga., 637; *Railway Co.* v. *Bell*, 81 Ill., 76; *Daley* v. *Railway Co.*, 26 Conn., 590; *O'Mara* v. *Railway Co.*, 38 N. Y., 445; *Powers* v. *Harlow*, 53 Mich., 515; *Railway Co.* v. *Rourke*, 10 Bradw., 474; *Earl* v. *Crouch*, 61 Hun., 624; *Earl* v. *Crouch*, 131 N. Y., 613; *Railroad Co.* v. *Popp*, 27 S. W. Rep., 992; *McAlpin* v. *Powell*, 70 N. Y., 126; *Schmit* v. *Kansas City Co.*, 90 Mo., 284; *Penso* v. *McCormick*, 125 Ind., 116; *Water Works* v. *Orr*, 83 Pa. St., 332; *Whirley* v. *Whiteman*, 1 Head (Tenn.), 610; *Mullaney* v. *Spence*, 15 Abb. Pr., N. S. (N. Y.), 319; *Birge* v. *Gardner*, 19 Conn., 507; *Bransom* v. *Labrot*, 81 Ky., 638; *Malloy* v. *Saving Society*, 21 Pac. Rep., 525; *Car Works Co.* v. *Cooper*, 60 Ark., 545; *Pekin* v. *McMahon*, 154 Ill., 141; *Price* v. *Water Co.*, 58 Kan., 551; *Doublin Cotton* v. *Jarrard*, 91 Tex., 289; *DeTarr* v. *Brewing Co.*, 61 Pac. Rep., 689; *Herrick* v. *Wixom*, 80 N. W. Rep., 117; *Mackey* v. *Vicksburg*, 64 Miss., 777; *Railroad Co.* v. *Bockoven*, 53 Kans., 279; 7 Am. & Eng. Enc. Law, 403; *Koons* v. *Railway Co.*, 65 Mo., 592; *Railway Co.* v. *Styron*, 66 Tex., 421; *Railway Co.* v. *Simpson*, 60 Tex., 103; *Evansich* v. *Railway Co.*, 57 Tex., 126; *Railway Co.* v. *McWhirter*, 77 Tex., 356; *Barrett* v. *Railway Co.*, 91 Cal., 296; *Callahan* v. *Railway Co.*, 92 Cal., 89; *Ferguson* v. *Railway Co.*, 77 Ga., 102; *Railway Co.* v. *Hedrick*, 1 Wash., 446; *Nagle* v. *Railway Co.*, 75 Mo., 653; *Railway Co.* v. *Fitzsimmons*, 22 Kan., 686; *Bridger* v. *Railway Co.*, 25 S. C., 24; *Railway Co.* v. *Robertson*, (Tex.), 14 L. R. A., 781; S. C. 16; S. W. Rep., 1093; *Bates* v. *Railway Co.*, 90 Tenn., 36; *Walsh* v. *Railway Co.*, 145 N. Y., 301; *Railway Co.* v. *Reich*, 61 N. J. L., 635; *Turess* v. *Railway Co.*, 61 N. J. L., 314; *McEachern* v. *Railway Co.*, 150 Mass., 515; *Corby* v. *Hill*, 4 C. B. (N. S.), 556; Cooley on Torts, Ch. 10, p. 303; 2 Shear. & Redf. on Neg., Sec. 705; Black on Law and Prac. in Acc. Cases, Sec. 81; Thomas on Neg., Secs. 1078, 1083; Buswell on Law of Pers. Inj., Sec. 75; 1 Thompson on Neg., Secs. 1030-1051; *Ellsworth* v. *Metheney*, 104 Fed. Rep., 119; *Formall* v. *Standard Oil Co.*, 86 N. W. Rep., 947; *Clark* v. *Manchester*, 62 N. H., 577; *Tally* v. *City of Atlantic*, 92 Ia., 135; *Grindley* v. *McKechnie*, 163 Mass., 494; *Gay* v. *Railway Co.*, 159 Mass., 238; *Daniels* v. *Railway Co.*, 154 Mass., 349; *Ratte* v. *Dawson*, 50 Minn., 450; *Stendal* v. *Boyd*, 60 N. W. Rep., 899; *Barney* v. *Railway Co.*, 28 S. W. Rep., 1069; *Vander-*

*beck* v. *Hendry,* 34 N. J. L., 472; *Davis* v. *Railway Co.,* 58 Wis., 646; *Peters* v. *Bowman,* 115 Cal., 345.

PRICE, J.; BURKET, C. J., SPEAR, DAVIS, SHAUCK and CREW, JJ., concur.

We have for consideration in this case, not only the question as to the sufficiency of the petition in stating a cause of action against the railroad company, but also, the question whether the uncontroverted facts submitted to the jury tend to establish a right of recovery. The evidence varies somewhat from the averments of the petition, but such variance consists mainly in the phraseology and its coloring, which are natural to a pleading, as compared with the narration of facts and events by witnesses upon the stand. Therefore, when we state the controlling and conceded facts of the case as they appear in the record, as well as in the briefs of counsel, we present also the substance of the petition.

At the close of all the evidence, the railroad company asked the court to direct a verdict for the defendant. This the court refused to do, and the ruling was excepted to.

It is not claimed that the testimony introduced by the defendant tended to strengthen the plaintiff's case, and the motion raised the question whether the undisputed facts tended to show a right of recovery. What are these facts?

The premises on which the boy sustained the injury belonged to the railroad company, and are situate in the north part of the city of Toledo, between Bush and Magnolia streets, lying not far from, if not adjoining the right of way of the defendant company, and extended to the Wheeling & Lake Erie railroad, a distance of about two hundred feet. This tract of land was an open, unfenced common, not near any depot of the company, and none of its buildings were upon it. Part of this ground was higher than the remainder, and on it were some low places which the company desired to fill, and to grade the tract to a more even surface. In the summer of 1896 the company let a contract for the work contemplated and it was entered upon some time in June of that year. The earth to make the fills was taken from the high ground of the tract by means of a steam shovel, and after the work of excavation had proceeded well towards completion, on account of a con-

troversy between the company and the contractor, the work was suspended, which was some time in August of the same year. The making of the excavation left a bank, mostly of clay, about ten feet high, and which was situated at least one hundred feet from the tracks of the Ann Arbor railroad.

The steam shovel which removed the earth from the bank left its surface uneven. From its base the ground sloped gradually toward the railroad. The lower portion of the ten foot embankment had some slope outward, and the upper portion was nearly perpendicular; and at the time of the injury the top of the bank at some places projected slightly. The low places in the tract of land had been filled, and the ground, except the bank and its base, graded so that it was nearly level, and it remained in that condition from the time the contractor quit work in the summer 1896 until after the injury in August, 1897. No other or further work was done on the commons or at the bank during that time and no change had occurred in the shape or condition of the bank, except as made by the weather and the acts of the injured boy and his companions.

After the work ceased in 1896, young men and others who desired to play base ball, assembled and played ball on this common; and this habit was renewed in the summer of 1897. The plaintiff, a boy about eleven years of age, and others both older and younger than he were attracted to the common by the games of base ball, and if they did not engage in that game themselves were frequently onlookers while other played, and at such times occupied the sloping base of the bank. On the day of the injury the plaintiff and his companions were witnessing the game, and, as on preceding days, whiled away a part of their time in digging into the clay bank—some with their fingers and others used sticks, the object being to get clay with which to make balls to throw at each other. This amusement was in progress at the time the plaintiff was injured. He, with others, had been so engaged during the progress of the game, and where the plaintiff was, or near thereto, a hole about a foot deep had been made in the bank four or five feet from its base. Some one used an iron ice hook instead of his fingers to get out the clay. While so engaged near the foot of the bank, the top of the bank caved and a portion of it fell upon the plaintiff, Kinz, and he was injured.

The railroad company did not at any time invite the ball players or the plaintiff and his companions, or any one, to enter upon or visit the premises. The evidence tends to show that the agents of the company had knowledge that these young men and boys used the grounds for play, but no permission was given, except such as might be implied from silence. There is no evidence tending to show that the railroad company had any knowledge of the habit of the plaintiff or other boys to dig into the banks, or attempt to interfere with its condition. The means of knowing what was transpiring on the unfenced common were such views of the place as the servants and agents of the company might obtain while on trains passing to and fro. on the railroad; but we assume that the company had knowledge of the use being made of the premises for playing ball, and that boys great and small were in the habit of resorting there for play.

There had been no material change in the condition of the common or the bank from the time the grading had been left except such change as the weather might have caused. This bank was largely clay, as all witnesses have testified, and it had passed through the period of a year of atmospheric changes—the storms of autumn, winter and summer—and remained about the same when young Kinz received his injury. This fact shows that there was nothing in the situation to excite suspicion of danger of the bank falling, and there was nothing to arouse an anticipation on the part. of the company that any danger lurked in the existence of the bank.

No new danger was taken onto the premises by the company, after the boys began to resort thither, nor did the company place thereon anything to attract children and cause them to congregate there. The only attraction for boys on the grounds was the play of base ball conducted by older boys or men, who were also trespassers, or at best were licensees.

On this statement of the facts, a conclusion of law is not difficult to reach.

What duty, under these circumstances, did the railroad company owe these licensees? What duty was omitted by the company? One answer to this question is made by counsel for defendant in error on page two of the brief, where it is said:

"The injury complained of, as we contend, was attributable to the fact that the railroad company had prevented the contractor from finishing up his work. Had he been permitted to finish it up, the place would have been sloped down, with no likelihood of the clay bank falling over."

Again, on page three of the brief, it is said:

"There never were any fences or other enclosures, nor guards, nor warnings to keep off, nor indications of possible danger."

It does not require a close analysis of these complaints to expose their fallacy. The record discloses that the trial court indulged to some extent, inquiries as to the justice and propriety of the order to cease the work which the company gave the contractor; but such inquiries were wholly foreign to the case on trial. That was a matter of business between the railroad company and the contractor, to be settled by the parties or through the courts. The company was under no obligations to do any grading of the ground, and when it commenced, it could lawfully quit whenever it deemed it proper, being liable to any contractor for an unjustifiable breach of contract with reference to the work. While it would be under obligations to leave no unguarded pitfalls, or dangerous traps, to which children might be enticed, the extent of the excavation and where it should stop was a subject for its decision alone. It owed nothing to the public or any part of it in reference thereto.

One author states the general rule in this form: "The general rule undoubtedly is, that the owner or occupier of land is not bound to take pains to prepare his premises in any particular way, to the end of promoting the safety of children who may come thereon as trespassers or as bare licensees; but that, as in the case of adults, they take the premises as they find them, and if killed or injured by reason of the condition in which they find them, this does not give a right to an action for damages." Commentaries on the Law of Negligence by Thompson, Vol. 1, Sec. 1025.

While this rule has the sanction of very many courts and text writers, indeed of a great array of authorities, it is by others regarded as harsh and severe when applied to children, and in many cases it is held that the owner of open or other grounds, where children are permitted to resort by such owner, may be liable for

his negligence in keeping on the premises any attractive danger or nuisance, or unseen dangerous conditions whereby a child may be injured. The latter is the more humane view and may be regarded as a modification of the general rule.

We think the better and more reasonable proposition is that the owner of property owes no general duty to keep it in condition which will insure the safety of persons who go upon it without invitation or license; yet if he keeps upon his premises dangerous machinery or other things likely to attract children, and does not guard them to prevent injuries to them, he is liable for injuries resulting from his neglect to provide such guards. One of the reasons assigned for this rule by some authorities is that the keeping on the premises a machine or other thing which naturally entices the very young and curious, and thus attracts their presence, may be construed as an implied invitation to enter the premises so occupied by the dangerous machine or other device, in which case it becomes the duty of the owner to see that the person thus invited is not placed in peril.

But it is not our duty to pursue these various cases and authorities as they meet or diverge, for we have no case here calling for such labor. The facts before us show no secret dangers, traps, or pitfalls, and the premises were not in a dangerous condition; nor did the owner place or maintain thereon any object or thing to attract the young and unwary. It was under no obligation to the public or its youth, to complete the grading and slope down to perfect safety, all banks, and smooth out the uneven places left by the steam shovel.

The other fault found with the conduct of the railway company is that the grounds were unenclosed, and there were no guards, nor warnings to keep off, etc.

What was there that seemed to require warnings or guards to keep off? Nothing but a clay bank several rods in length and about ten feet high in most places. It was in plain view and about its presence there could be no mistake. It had been there practically in the same condition for a year preceding the accident, except the effect of weather, which, as one expert witness states, tends to reduce the bank to a condition of repose. "All earth and

sand weathers down into what we call a natural slope, or assumes an angle of repose."

In no decided case or text-book do we find a rule that required this company to display signs of warning or signals of danger in front of the bank. Omitting to do so was not such negligence as would make it liable for the injury. The danger of the bank falling was neither imminent or probable until the boys began to undermine it, of which the company had no knowledge.

There is nothing in the record to show that it had reason to anticipate the result of the acts of Kinz and his companions. But Section 3324, Revised Statutes, is cited as imposing a duty to fence the grounds. That section provides: "A company or person having control or management of a railroad shall construct, or cause to be constructed, and maintain in good repair on each side of such road, along the line of the lands of the company owning or operating the same, a fence sufficient to turn stock;" * * * . The section further provides for cattle guards and crossings, and makes the company liable in damages for neglect to maintain such fence, crossings and cattle guards. The "fence" spoken of must be sufficient to turn stock. From what? Evidently the right of way and tracks of the railroad, and the crossings and cattle guards are to make a safe way for the traveler over the tracks of the railroad and the cattle guards to prevent cattle from passing from the crossing onto the tracks and right of way of the railroad.

Hence, it is perfectly apparent that the statute does not refer to lands of the company other than its line of road and right of way, on each side of which must be a fence sufficient to turn stock; and it did not require the company to fence the common where Kinz was injured.

The defendant in error cites many cases in which the owner was held liable for injuries to children upon his premises, no one of which is authority here; nor do they furnish a correct rule by which to measure the conduct of plaintiff in error in this case. We can not spread out in this opinion the facts upon which each of the various cases stands, but an examination of them will verify our statement.

As a sample for investigation take the case of *Lynch* v. *Nurdin,* 1 Q. B., 29, cited for defendant in error as a leading case. It is

true this case seems to have been approved in two or more decisions of the Supreme Court of the United States—see *Railroad Co.* v. *Stout,* 17 Wall., 657 (a turntable case), and *Union Pacific Railway Co.* v. *McDonald,* 152 U. S., 262—and in decisions of many of our state courts; and it has been questioned, if not repudiated,. since in English courts—see *Hughes* v. *Macfie,* 2 Hurl. & Colt., 747, and *Mangan* v. *Atterton,* 4 Hurl. & Colt., 388—and it is not regarded sound by several American courts. However, it has been quoted with approval by this court in several cases. See *B. & I. R. R. Co.* v. *Snyder,* 18 Ohio St., 399; *Harriman v. Railway Co.,* 45 Ohio St., 11. But what is the *Lynch* v. *Nurdin* case? "Defendant left his horse and cart unattended for half an hour in a public street. During his absence, the plaintiff, a child between six and seven years old, got upon the cart. While the plaintiff was there, another child caused the horse to move on, and the plaintiff fell in consequence, and was hurt. *Held:* That defendant was liable in an action on the case for negligence,. although the plaintiff had partly occasioned the accident by his own trespass." It is to be observed that the owner of the horse and cart was first in the wrong in leaving them unattended in a public street, where a young child, rightfully also in the street, was enticed to climb onto the cart from which he fell. Contributory negligence, of one so young, could not be well sustained; and yet that case has become the reputed mother of a vast progeny of adjudicated cases, each claiming to be a legitimate heir of the doctrine of the parent case. Many of them are "torpedo cases," "turntable cases," and most of them have decisive characteristics of some "attractive nuisance," which the owner kept, or permitted on his premises, to which the children have been attracted and injured.

It is said in this case that the lower courts were influenced to their judgments by the case of *Harriman* v. *Railway Co.,* 45 Ohio St., 11, and from the language of the opinion of the circuit court, it seems that it rested its conclusions on the Harriman case with some doubts and hesitation. That was a torpedo case. The public, including children, had long been accustomed to pass along the railroad at a certain point, with the permission, or at least without objection on the part of the company. Some of its servants had left a torpedo enclosed in a box-shaped receptacle on the railroad

at this frequented place. It was discovered by a boy who carried it to the plaintiff, another boy, who stood not far off. In exercising the youthful curiosity to know what was contained in the box, one attempted to open it, when it exploded and severely injured the plaintiff. The case in this court was decided, as in the lower courts, on a demurrer to the amended petition, which among other averments, alleged, "that there was no reason for making use of said torpedo at said time or place, nor was there any necessity of giving danger signals; but the same were used in mere wantonness, and with a view that said train, on being moved forward, would pass over and explode the same." The petition further charged that the railroad company negligently failed to explode the torpedoes, but left them on its road where it knew people, including children, were accustomed to pass, without hindrance from the company. This court held in that case that the petition stated a good cause of action, and with that decision we are still content. The torpedo was intrinsically dangerous, as well as attractive to children. But it does not follow that the rule laid down in that case can be carried to the support of every claim of liability made against the owner of premises for injuries to either adult or child, sustained while thereon by sufferance of the owner. Like every other case it is to be interpreted and applied according to the facts which were its groundwork. This is the only safe and satisfactory canon for the understanding of all adjudicated cases. How does that case apply to the questions at bar? What attracted young Kinz and his companions to the open grounds? The games of base ball as played by their seniors. So says all the evidence. No witness states that the clay bank attracted any one to those grounds. It was but an ordinary, uninviting, unsightly, dismal bank of earth. Therefore, the railroad company maintained no attractive or dangerous nuisance on its premises. Other and older trespassers furnished the attraction for the young boys, for which the company is not responsible.

A contrary doctrine would shift responsibility for the care and safety of children from parents and guardians to their neighbors, an innovation in the law and morals of the land which we are not willing to encourage.

We are unanimously of the opinion there should be no recovery in this case. The petition fails to state a cause of action, and the court erred in refusing to direct a verdict for the defendant below.

The judgments of both the lower courts are reversed, and the plaintiff in error is entitled to judgment on the controlling uncontroverted evidence.

*Judgment reversed and judgment for plaintiff in error.*