## Puckett v. City of Louisville.

(Decided April 29, 1938.)

W. J. GOODWIN and BEN MAZIN for appellant.

GAVIN H. COCHRAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the time of sustaining the injuries to recover damages for which the plaintiff, Thelma Puckett, filed this action against the City of Louisville in the Jefferson circuit court, she was eleven years and four months old—the action being filed on September 30, 1935, by her mother, Mrs. Mae Bailey, as her next friend. Mrs. Bailey, with whom Thelma, her child by her first husband, was residing, lived in a different part of the city from a Mrs. Jackson, who resided in the extreme southern or southeastern portion of the corporate limits of the city and south of the southern railway tracks. The lot upon which Mrs. Jackson resided abutted on the south side of the north portion of Bowman avenue, which was then being constructed by the city. Paralleling that avenue on the south, and 280 feet distant, is a new street now known as Crittenden drive. Some years before the involved accident the space between those two streets was platted and subdivided, but it thereafter remained in its natural state without any street marks, lines, or other improvements. One of the lots abutting on the north side of Crittenden drive was numbered 1367, and it had been acquired by the city under a sale of it for city taxes. The soil in the subdivision, including that of lot 1367, was of a clammy sandy substance, and persons needing that quality of sand had gone upon the lot and made some excavations therein in procuring sand; but whether that was with or without the permission and consent of the city, or the former owner of the lot, does not appear.

A Mrs. Spencer, with a young daughter, and a son about 14 years of age, was visiting Mrs. Jackson on the same day as Mrs. Bailey and Thelma Puckett—they being her cousins. Mrs. Jackson also had a young daughter, and some time during the day the children obtained from the home of Mrs. Jackson some spoons, which young Spencer said they procured from her dining room. They left the Jackson residence with their spoons and a toy truck and began playing in the unfinished portion of Bowman avenue, which was about one block south of the Jackson residence, and lot No.

1367 owned by the city was about 100 yards east of the portion of Bowman avenue where the children first commenced playing. After a time they left Bowman avenue and crossed that 100-yard space to the lot owned by the city upon which were the excavations made by persons desiring sand. It appears that in extracting the sand it was not done regularly, and in some portions of the lot peaks from some cause were left, although portions of the lot do not appear to have been so explored at all. The proof shows that upon occasions prior thereto children of the neighborhood—particularly boys—would get in the excavation and play what they described as "cowboys."

After the children arrived with their spoons at the indicated place, the plaintiff—with her 14 year old cousin, Virble Spencer—began to dig at the base of a small perpendicular bluff, and finally excavated a place large enough for both of them to enter. The bluff or bank at that point was slightly nigher than the waist of an average sized man and came somewhere near the neck of Thelma Puckett, as she testified, when she was standing upright on the bottom. After the children had been missed from the Jackson residence for some time, Mrs. Bailey started to hunt for them and finally located them on the lot owned by the city. When she arrived, she saw the excavation that young Spencer and her daughter (plaintiff) had made, with both of them in it, and she made some exclamation about the possible danger to them in that position, and young Spencer, according to the testimony, jumped out of the hole that had been made with the spoons; but Thelma, who was lying on her stomach, did not get out, and as young Spencer emerged a lump of the soil and sand above the excavation fell upon Thelma and produced the injuries to recover for which the action was filed. It, of course, is based upon what is generally known as the "Attractive Nuisance" doctrine; but at the close of plaintiff's testimony the court sustained defendant's motion for a directed verdict in its favor, upon which judgment dismissing the petition was rendered, to reverse which plaintiff prosecutes this appeal.

Counsel for appellant cite in their brief filed in this court many domestic and some foreign cases wherein the doctrine was upheld and applied—all of which involved machinery, rock piles, sand piles, or other structures and artificial conditions, all of which were

either immediately adjacent to or upon streets easily accessible to children of immature years, and which were enticing and attractive to them. Such conditions also were potentially dangerous to undeveloped youthful minds as possessed by immature childhood and which they were liable to encounter in playing with, upon, or about them when left in the surroundings indicated. If in such conditions children of immature and unthoughtful age do play with the contrivance. or other situation, so artificially produced, and become injured while it or they are unguarded or unprotected, the law, out of a spirit of humanity, has extended a right of action to the injured infant against the one who produced the situation, and for a better name the contrivance or condition has been designated as an "Attractive Nuisance" and has acquired a fixed place in the law of negligence. The doctrine—with the necessary elements to create liability—is tersely treated in the text of 20 R. C. L. beginning on page 79 and extending to page 99, and being sections 70-86, both inclusive. The last section (86) says:.

"Like waters, pits and excavations on land embody no dangers that are not readily apparent to everyone, even very young children. For this reason the proprietor is under no obligation, as a rule, to fence or otherwise guard such places, and he will not be liable for injuries to children who may have fallen therein. Nor is the landowner liable for injuries sustained by earth falling into excavations as a result of the embankment being undermined by children. Where, however, excavations are made in the highway, guards or barriers must be erected to protect passers from injury."

An annotation in 19 L. R. A., N. S., on page 1152, dealing with the doctrine as it applies to excavations, is cited in support of that text. One of the cases in the annotation is that of Savannah F. & W. Railway Company v. Beavers, 113 Ga. 398, 39 S. E. 82, 54 L. R. A. 314, and which held: "That an excavation upon private land is attractive to children does not require the owner so to guard it as to prevent injury to children coming upon it without his invitation, express or implied." Also there is cited in support of the same text the case of Magner v. Frankford Baptist Church, 174 Pa. 84, 34 A. 456, holding, in substance, as stated in the annotation, that "The owner of land is under no duty to

protect an infant trespasser who comes from the street across the land of another, from the possible danger of falling into a quarry on the land of a stranger.''

We had occasion to go quite extensively into the doctrine and to analyze and point out the facts in which it would be applied in the case of Louisville & Nashville Railroad Company v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328. Immediately following that opinion, as published in the A. L. R. volume, is the case of Cox v. Alabama Steel Company, 216 Ala. 35, 112 So. 352, beginning on page 1336, and at the end of the latter opinion is an extended annotation discussing the doctrine of attractive nuisance and pointing out the necessary conditions for its application, as well as facts and conditions wherein it would not be enforced. The chief question in the Hutton Case—and the one to which we devoted the principal part of our opinion—related to the effect of the age of the infant plaintiff upon his right to invoke the doctrine and the conclusion was reached that an infant 14 years of age or older could not invoke it ''in the absence of faulty mental development.'' In the course of the opinion we dealt with all of the elements necessary for its application. Extensive prior annotations of the same nature and discussing the same subject will be found in 36 A. L. R. 34, 39 A. L. R. 486, and 45 A. L. R. 982, and a later one, published after the volume containing the Hutton Case, will be found in 60 A. L. R. 1444. The annotation in 36 A. L. R. immediately follows the case of United Zinc & Chemical Company v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, and it covers 260 pages and is both carefully prepared and exhaustive. In all of them, as reported in the several volumes referred to—and as was also done by us in the Hutton opinion—sharp attention is drawn to the facts that the infant plaintiff in an attractive nuisance case is always a trespasser, and that the doctrine will not be extended so as to embrace situations not within the reason underlying its original pronouncement. Throughout all of the annotations, as well as opinions and texts dealing with the question, it is emphasized that it was never intended by the courts in approving and applying the doctrine that it should be extended to all locations of attractive conditions to children, howsoever much removed they might be from places where children could be expected to be and not in juxtaposition to public

ways. Therefore, where the location was removed from such places and the infant trespasser was compelled to hunt for or seek it out, then most usually the owner or maintainer of the premises would not be liable.

Moreover, it will be found by consulting the authorities cited that the benefit of the doctrine is generally withheld when the injury is produced by a danger created by the activity of the infant and which did not exist, except for such activity, and especially so when the infant was of an age that reasonable men would presume that he would appreciate the consequences of what he was doing and would refrain from such engagements; and where the danger could not be produced except with instrumentalities procured by the infant off the premises and carried there—the right of recovery being limited to conditions present on the premises that the owner of them permitted to exist, with the actual or constructive knowledge that they would be attractive to infants of tender and indiscreet age, and that they might reasonably become injured by employing the conditions which they found upon the premises.

In this case the testimony showed that plaintiff and her companions traveled through unoccupied commons, covered with grass and other growths as much as or more than 100 yards from a projected street, and more than 200 yards from the home from which they started and from the presence of their parents, to reach the alleged attractive nuisance. When they arrived there, they found only certain excavations on the city's lot, the embankments of which were not exceeding 4 feet high. They carried with them implements with the use of which they could and did undermine those shallow embankments, causing the top of the surface to break loose and fall. We are thoroughly convinced that nothing can be found in any of the authorities or annotations referred to authorizing the application of the doctrine under the facts of this case. If we were to do so, then where would liability stop? There would be no logical reason why it should not exist if the alleged nuisance was far greater removed from public places and resorts upon which children usually gather, congregate, and play, and the owner of premises would then be under obligation to erect barriers or stand guard to prevent the gathering of infants upon his premises if, perchance, they came or could come upon

them with tools and implements by the use of which they could create dangerous situations. The burden would be far beyond that which was intended to be imposed when the doctrine was first framed and announced.

Throughout the annotations it is pointed out, without exception, that pools and ponds maintained for legitimate purposes do not create such attractive nuisances as will entail liability upon the maintainer thereof if an infant is drowned or injured by entering therein, since the maintained condition was not ipso facto dangerous, but only because of the use of it made by the trespassing infant. So it is here, where the conditions maintained on the city's lot were perfectly safe, and located away from public gathering places, or places of public appropriation, nor could the conditions be made unsafe or dangerous without the use of implements not found thereon and employed by the infant himself.

Furthermore, in this case plaintiff's cousin, who visited Mrs. Jackson with her mother, Virble Spencer, was as much or more than 14 years of age at the time; while plaintiff was 11 years and 4 months old. Under the doctrine of the Hutton Case the boy would have no cause of action against the city (because of his age) if he had been injured, and it appears from the evidence that he was the more active excavator of the sand from under the embankment that fell in the instant case. In the circumstances it is difficult to perceive any logical reason why liability should be imposed against the city under the facts here presented than if the surface of its lot had become irregular by the natural processes of washing into gullies, and the excavation had been made at the base of one of them. There should be limits placed upon the application of the doctrine, and we are confident that the facts of this case place it beyond any extension that any court has ever made in upholding it.

The necessity for us in this opinion to enter into a more extended discussion of the facts authorizing an invoking of the doctrine is dispensed with because that task is exhaustively performed in the annotation referred to, to which the reader is referred. It is sufficient to only say here that the owner of premises is not an insurer against accidents to trespassing children produced by the maintenance of an attractive nui-

sance thereon. He is only required to exercise ordinary care to guard and protect the trespassing infant from such danger. See McMillin's Adm'r v. Bourbon Stock Yards Company, 1918, 179 Ky. 140, 200 S. W. 328, L. R. A. 1918C, 682. Ordinary care within that rule as applied to such cases is what a reasonably prudent man would determine as a usual consequence from actually or constructively known conditions. In this case it could not be reasonably anticipated that trespassing children would seek out the involved premises supplied with tools and implements for excavating, and to employ them in the manner that was done by plaintiff and her companion in this case and to eventually become injured in the manner described.

We therefore conclude that the court did not err in sustaining defendant's motion for a peremptory instruction, and the judgment is affirmed.