ANDRE GAGNIER AND EMMA GAGNIER, PLAINTIFFS AND
RESPONDENTS, *v.* THE CURRAN CONSTRUCTION COM-
PANY, A MONTANA CORPORATION, JOHN H. BUCK AND WIL-
LIAM F. CURRAN, JR., DEFENDANTS AND APPELLANTS.

No. 11388.
Submitted May 8, 1968. Decided July 22, 1968.
Rehearing Denied August 19, 1968.
443 P.2d 894.

Karl R. Karlberg, argued, Missoula, for appellants.

Dexter L. Delaney, argued, Sherman V. Lohn, argued, Missoula, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This appeal is from a jury verdict for damages resulting

from the death of a child. The jury awarded an amount of $35,661 of which $25,000 was for punitive or exemplary damages.

On September 24, 1963, Renee Gagnier, aged 9, and a playmate, Christine Byington, were suffocated at a cave-in of an excavation on property owned by the Curran Construction Company, appellant herein. The property involved was located in a new residential subdivision near the city of Missoula. The subdivision at the time of the accident was partially built with many homes and occupied; some in the process of being built. The defendant company employed John H. Buck as its supervisor of construction on the project and he is an appellant in this action.

The appellants, in constructing the residence where the accident occurred, subcontracted the excavation work for the basement foundation, a cesspool and septic tank, and waterline to the Liberty Construction Company. On September 19th the work was done and in accord with custom and policy, the cesspool and septic tank and waterline trenches were backfilled the same day as excavated. The foundation excavation was from four and one-half to five and one-half feet deep and at the time of the accident had been open for five days. During that time, from the 19th to the 24th, another subcontractor had put in the foundation forms, poured the concrete and had pulled the forms.

The two children were found at about 9 p.m. buried in a cave-in of the north bank of the waterline located at the front of the property. The backfill in the waterline trench was to ground level at a point within 8 to 10 feet from the basement excavation, and from that point sloped at an incline to the floor of the foundation excavation. The work of the foundation subconrtractor had been completed prior to the finding of the children in the north bank of the waterline ditch remaining above the incline of the backfill material. The children were covered with one and one-half or two feet of heavy clay.

On the day of the accident Renee Gagnier had attended

school. She came home with Christie Byington and, after changing clothes, asked her mother for permission to play with Christie, who up until a short time before had lived in the Gagnier neighborhood. Christie's family had recently moved into the new subdivision, some half-mile from the Gagnier home; it was there the children went to play sometime after 4 p.m.

Renee was told to be home at 6 p.m. and when she did not return at that time her mother began to look for her. A check at the Byington home revealed Christie was not at home so the parents and neighbors began the search that ultimately resulted in finding the children, some three hours later.

The ground at the scene of the accident was of heavy clay which enabled the digging of excavations with near-perpendicular walls. The evidence indicated these clay walls supported substantial weight before the cave-in, including concrete trucks, form trucks and workmen. There was no indication from the evidence introduced that the appellants had any problems with prior cave-ins, although they had constructed a good many homes.

Considerable testimony was given concerning whether or not the appellants had knowledge of the fact that children were playing around the excavation. The respondents introduced into evidence photographs showing children's footprints on the loose dirt and around the excavation. These photographs were taken the night of the accident and the next day, but there was no proof of when the footprints were made. Appellants admitted that children were attracted to areas where home construction was going on, but denied knowledge that children were seen playing around the excavation where the accident occurred. Appellant Buck, the supervisor in charge, on cross-examination testified:

"Q. Prior to September 24, 1963. A. I don't recall ever having the personal knowledge that children were playing there before September 24, 1963, at 113 Wapikiya."

During the period from September 19th to September 24th,

after the excavation work and partial backfill of the septic tank and waterline ditch, Mr. Buck testified he was certain that he had visited the site many times on supervision duties. Concerning the day before the accident, the 23rd, the following questions and answers were recorded:

"Q. But my question was, were you there September 23rd? A. I am sure I was there September 23rd.

"Q. But your testimony is you didn't notice any indication that children were playing there? A. No, I didn't notice any indication that children were playing there at all."

During the course of the trial respondents introduced considerable evidence pertaining to the lack of warning and precautionary signs at the scene of the accident. In rebuttal the appellants showed by a preponderance of evidence that in the Missoula area it was neither the custom nor practice of the house building trade to barricade foundations or excavations for homes on private property.

The appellants set forth the following issues on appeal: (1) The court erred in failing to grant defendants motion for directed verdict after plaintiffs' case in chief; (2) The court erred in failing to grant defendants' motion for a directed verdict after the close of trial; (3) The court erred in failing to grant defendants' motion for judgment notwithstanding the verdict; (4) The court erred in failing to grant defendants' motion for new trial on each of the following grounds:

a. There was insufficient evidence to justify the verdict, and it is against the law.

b. The trial court erroneously instructed the jury in regard to the attractive nuisance doctrine.

c. The court erroneously instructed the jury that they could find exemplary damages against the defendants.

d. The court erroneously instructed the jury in regard to damages to the plaintiffs arising out of the wrongful death of plaintiffs' child.

e. The court erroneously refused defendants' offered instructions nos. 7, 9, 10, 15 and 17.

f. The court erred in giving instructions nos. 17 and 18, to which the defendants objected.

g. The court erroneously admitted into evidence over defendants' objections photographs of barricades at a public roadway and commercial construction site as a standard in regard to residential construction on private property.

For our consideration and because of the disposition of this appeal we will join the issues into two principal considerations:

1. Whether or not, under the facts set forth here, the court erred in instructing the jury on the attractive nuisance doctrine.

2. Should exemplary damages have been considered in this case?

The so-called attractive nuisance doctrine is no stranger in Montana for it first appeared before this Court in the case of Driscoll v. Clark, 32 Mont. 172, 80 P. 1 (1905). As this doctrine was developed by the case law of this state this Court adopted as part of the doctrine the Restatement of Law, Torts 2d, section 339. See Nichols v. Consolidated Dairies of Lake County, Inc., 125 Mont. 460, 239 P.2d 740. Section 339, Torts 2d, of the Restatement provides:

"Artificial Conditions Highly Dangerous to Trespassing Children.

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize

will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c)   the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d)   the utility to the possession of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e)   the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

■ With this as a guide for our consideration it is clear that for the respondents to prevail in this case it is necessary they prove by a preponderance of the evidence each and every element above set forth in the Restatement.

A.   The respondents rest their case upon this Court's ruling in the case of Gilligan v. City of Butte, 118 Mont. 350, 166 P.2d 797. In that case this Court took from an Indiana case, City of Indianapolis v. Emmelman, 108 Ind. 530, 9 N.E. 155, a definition of what constitutes an artificial condition: "Whoever   *   *   *   does anything in, or immediately adjacent to, a public street, calculated to attract children of the vicinity into danger, which they cannot appreciate, owes the duty of protecting them by suitably guarding the source of danger *   *   *."

With this quote from the Indiana case we do not disagree, under the fact situation of that case, nor under the fact situation of the Gilligan case, but here we find it to be inapplicable. In the City of Indianapolis case the city excavated in the bed of a street just off from a street intersection where children played; the excavation was full of water and left unguarded, resulting in the death of a child who fell into it. In the Montana case Gilligan v. City of Butte, supra, a five year old child was severely burned and permanently injured when her dress caught fire from flames of an open torch left unattended

during daylight hours, in the residential section of town, during the repair and resurfacing of one of the city streets.

In the Gilligan case the accident occurred in a city street where the city had an obligation and duty to keep the street in a reasonably safe condition for use by the public. There the Court held, and quite properly so: "The general public has the right to the use of the public streets of a city and such streets are open to persons of all ages. The municipality owes a duty of care toward children rightfully upon and using its streets and a child in the street is not in any sense a trespasser, even though the child is using the street for the purposes of play. (Citing cases.)"

The issue that confronts us in this case is whether or not, under the facts of this case, the doctrine laid down in Gilligan v. City of Butte will be extended to an uninvited child trespassing upon private property.

It should be noted that up to now the Montana case law has not faced a case involving an excavation cave-in, a sandpile or clay bank, but there is a substantial body of case law in other jurisdictions holding these conditions to be duplicates of a natural condition, familiar to the average child, and do not call for the application of the attractive nuisance doctrine. Zagar v. Union Pac. R. Co., 113 Kan. 240, 214 P. 107; Knight v. Kaiser Co., 48 Cal.2d 778, 312 P.2d 1089; Edwards v. Maule Industries, Inc., Fla.App., 147 So.2d 5; Ratte v. Dawson, 50 Minn. 450, 52 N.W. 965; Anderson v. Reith-Riley Const. Co., 112 Ind. App. 170, 44 N.E.2d 184; Puckett v. City of Louisville, 273 Ky. 349, 116 S.W.2d 627; Alvis' Adm'r v. Weaver, 206 Ky. 95, 266 S.W. 888; Kotowski v. Taylor, 31 Del. 430, 114 A. 861; Plante v. Lorraine Mfg. Co., 78 R.I. 505, 82 A.2d 893; Ann Arbor R. Co. v. Kinz, 68 Ohio St. 210, 67 N.E. 479.

We believe, after carefully considering the case law of the various jurisdictions, that the correct view is that certain conditions in or about buildings under construction are not the type of conditions that can be classified as attractive

nuisances. Although this doctrine is frequently exposed to extension through the influence of sympathy, it is and must be limited so that not everything a jury might find or a court rule upon as being attractive to children be admitted. To do so would throw upon an owner of private property an unreasonable responsibility to guard against. Loftus v. Dehail, 133 Cal. 214, 65 P. 379; Camp v. Peel, 33 Cal.App.2d 612, 92 P.2d 428; Puchta v. Rothman, 99 Cal. App.2d 285, 221 P.2d 744; Neal v. Home Builders, Inc., 232 Ind. 160, 111 N.E.2d 280, 713, 44 A.L.R.2d 1253.

B. The "turntable" cases being the first of the attractive nuisance cases arose from the construction of a dangerous machine on property. Protection of children attracted to the property by the device was simple—a locking device. From this basis the doctrine has been extended to cover varying conditions which the possessor knew or should have known would involve an unreasonable risk of death or harm to children. Here, the condition that caused the death of the children was that they were either standing on the edge of the cut and it gave way covering them or they were in the trench and undermined a bank causing it to collapse and bury them under some 2 feet of clay. While no one saw the accident, the latter theory of how the accident occurred carries the most weight; from the evidence we fail to agree with the trial court that the respondents established the appellants had created such a dangerous condition as is required in the law. The danger of the bank caving in was neither foreseeable nor probable until something was done to change it and there is nothing in the record to indicate the appellants had reason to anticipate the girls' actions.

C. Concerning the next element necessary of proof, the appellants' knowledge of the trespassing of children, we have previously alluded to in our fact situation. The respondents rest nearly all of their proof of this necessary element

in appellant Buck's alleged statement to Mrs. King, the mother of the Byington child:

"Q. * * * Did Mr. Buck, during this conversation that you're relating, did he make any statements to you with regard to his knowledge that the children had been playing in the excavation areas? A. Yes. He said that he had chased children out of there any number of times. I think—not in just these two houses, but the whole area; the whole area, it was brand new and I gathered he meant ever since they had started there that he had been chasing children out of there."

This coupled with the testimony of Mr. Byington, Mrs. King's ex-husband, that he had seen children's footprints at the excavation subsequent to the accident made this a jury question, though appellants denied knowledge.

D. Concerning the element of knowledge on the part of the appellants that there was a risk the bank would or could collapse, we find the undisputed and uncontradicted evidence to completely favor the appellants. There is no showing they knew the bank was being undermined or that it could collapse. To the contrary, their subcontractors had backed up equipment weighing many tons to within a few feet of the edge without even the crumbling of the lip of the excavation which would indicate the appellants could not with reasonable foresight have foreseen this accident.

We agree with the Restatement of Law, Torts 2d, § 339, p. 201, that the phrase "reason to know" requires the owner of property to have information "that the particular condition exists upon his land, and that it is likely to be dangerous to trespassing children. The possessor is under no duty to inspect or police his land to discover whether such conditions exist; and he becomes subject to liability only when he knows or has reason to know that they do exist, and that they are dangerous."

E. This element "knowledge of the child" is the most difficult to appraise. A minority of the jurisdictions, Colorado, In-

diana, Louisiana, Mississippi, Missouri, South Carolina and Tennessee, hold that a child must be allured onto the land in the first instance by the thing which injures him. In these jurisdictions there can be no recovery unless the child discovers the particular object, is "attracted" into meddling with it, and is injured. In what is termed by legal scholars the "more enlightened jurisdictions" this narrow, antique and apparently quite unjustifiable limitation to "attraction" has been jettisoned, and the child who trespasses, for whatever reason, is allowed to recover even though he never discovers the thing which injures him, or has no interest in it whatever. District of Columbia, California, Florida, Illinois, Kansas, New Jersey, New Mexico, North Carolina, Pennsylvania and Wisconsin. It is this latter group that this Court has recognized in the case of Nichols v. Consolidated Dairies of Lake County, Inc., 125 Mont. 460, 239 P.2d 740.

The basic reason for the rule distinguishing trespassing children and adults is the recognized inability of a child to protect himself against the peril which he encounters. If this reason does not exist, the whole policy for the special rule fails with it. The cases universally hold that if the child is fully aware of the condition, understands and appreciates the danger, is able to avoid it, then he stands in no better position than an adult with similar knowledge and understanding.

Here, we have a child almost 10 years of age, of above average intelligence who according to the testimony had been warned by her parents not to play in or about construction sites or excavations. While such hazards are the type which should be known by children to be dangerous the fact question of whether or not this particular child should have realized the danger was for the jury to decide.

For the respondents to recover under the theory of their case it was necessary for them to prove by a preponderance of the evidence each of the elements of the doctrine of attractive nuisance previously set forth. As has been pointed out in our

discussion this was not done and the court erred in not granting appellants' motion for a directed verdict at the end of the respondents' case.

Concerning the next issue, Rule 59, M.R.Civ.P. provides when a new trial may be granted. We will enlarge upon that to make our decision here more clear. The rule is that a verdict is presumed to be correct and just until it can be shown with reasonable conviction that the jury (1) violated the law, or (2) gave way to passion, prejudice or partiality, or (3) made a mistake of law, or (4) acted carelessly or perversely. Spackman v. Ralph M. Parsons Company, 147 Mont. 500, 414 P.2d 918; 15 Am.Jur., Damages, § 205; Damages to Persons and Property, Oleck, 1961 Ed., p. 145.

Coming to the matter of the award of $25,000 exemplary damages, section 17-208, R.C.M.1947, states:

"In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Section 19-103, R.C.M.1947, in part states:

"18. The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law."

The facts of this case are void of any willful disregard of duty so as to amount to malice sufficient to warrant the imposition of exemplary damages. The giving of Instruction No. 18 was error and prejudiced the appellants' case before the jury. The testimony does not produce a shred of evidence pointing to an indifference on the part of the appellants which would permit the inference of malice. Here, the jury under the court's guidance acted in prejudice to the appellants' rights. It must be remembered that exemplary damages are extraordinary in their nature and are used by way of punish-

ment or by way of example only when the conduct of the defendants clearly shows that they are deserving of such treatment. Section 17-208, R.C.M.1947. The plaintiff is never entitled to exemplary damages as a matter of right, regardless of the situation or the sufficiency of the facts. Gilham v. Devereaux, 67 Mont. 75, 76, 214 P. 606, 33 A.L.R.381. In order to render one liable for exemplary damages something more than mere negligence must be alleged and proven. Spackman v. Ralph M. Parsons Company, 147 Mont. 500, 414 P.2d 918; Thompson v. Shanley, 93 Mont. 235, 246, 17 P.2d 1085.

The district court should have granted the defendants' motion, properly made, to withdraw and exclude the issue of exemplary damages from the jury's consideration and failure to do so was error.

In view of our disposition of this case we will not discuss other issues set forth by the appellants.

The judgment of the lower court is reversed and it is ordered that the trial court enter a directed verdict for the appellants.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR and CASTLES, concur.

MR. JUSTICE HASWELL (concurring in part and dissenting in part).

I concur in that part of the majority opinion disallowing punitive damages for the reasons therein stated; I dissent from that part of the majority opinion disallowing compensatory damages.

In this case a 9 year old child was killed by the cave-in of an excavation created and maintained in a dangerous condition by a building contractor who did absolutely nothing to protect anyone. The majority opinion completely absolves the contractor from any liability for the child's death *as a matter of law,* reversing a jury verdict in the process. In my view, this is unjust.

As I read the majority opinion, it holds that the so-called "attractive nuisance" doctrine of liability is inapplicable here because: (1) an artificial condition of land duplicating a natural condition is involved, and (2) there is a total absence of evidence that the contractor created a condition foreseeably dangerous to children.

The majority opinion cites numerous cases from other jurisdictions holding that the attractive nuisance doctrine is inapplicable *as a matter of law* to cave-ins of excavations, sand piles or clay banks; at least an equal number of cases from other jurisdictions hold to the contrary on the basis that this is a jury question. Peters v. City of Tampa, 115 Fla. 666, 155 So. 854; Holmberg v. City of Chicago, 244 Ill.App.505; Cicero State Bank v. Dolese and Shepard Co., 298 Ill.App. 290, 18 N.E.2d 574; Fink v. Missouri Furnace Company, 10 Mo.App. 61, 82 Mo. 276; Arrington v. Town of Pinetops, 197 N.C. 433, 149 S.E. 549; City of Shawnee v. Cheek, 41 Okl. 227, 137 P. 724; Baxter v. Park, 44 S.D. 360, 184 N.W. 198, and 205 N.W. 75. None of the cases cited in the majority opinion, nor here, are controlling precedent in the instant case. In my view, this Court should refrain from establishing any such purely arbitrary categorical exclusion. To exclude cases involving excavation cave-ins as a matter of law not only is illogical, but patently unjust as well.

The majority opinion also seems to hold that there is a total absence of evidence that the contractor created a condition dangerous to children or that the danger of a cave-in was foreseeable. This is pure fantasy—straight from dreamland. The evidence shows, without contradiction, that the contractor's agent had dug a deep trench with vertical walls on a lot abutting a public street in a residential subdivision, that water pipe had been laid therein, that the trench had been only partially backfilled and had been left open and unguarded for several days prior to the accident, that the north wall of the trench had caved in, and that a 9 year old child

living nearby was killed in the cave-in. The foreseeability of danger to children from such a cave-in was likewise a jury question. The presence of children on the property and the contractor's knowledge thereof was established as a jury issue by the testimony of Mrs. King, William Plummer, Reuben Tietz, and the photographs of Stanley Healy; the foreseeability of danger to such children from a cave-in was established as a jury issue by the testimony of Mr. Curran, defendant Buck, Mr. Byington, Melvin Fassio, William Plummer, Mrs. King and Reuben Tietz. The jury resolved these issues against the contractor by its verdict and this Court ought not to disturb such verdict based on substantial conflicting evidence.

In my view Court's Instruction No. 11 is a correct statement of the law on the "attractive nuisance" doctrine. (Compare with MJIG No. 120.03 and Sec. 339, Restatement of Torts 2d.) The trial court was required to instruct the jury on this doctrine because there was substantial conflicting evidence on the existence or nonexistence of the conditions on which its applicability is premised. On appeal this Court should not brush under the table this factual determination by the jury.

For the foregoing reasons I would affirm the verdict of the jury awarding $10,661 compensatory damages.